802 So.2d 875 (2001)
Stephen Arthur HANSEL
v.
Sarah Holyfield HANSEL w/o Stephen A. Hansel.
No. 2000-CA-1914.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2001.
*877 Ira Middleberg, Middleberg, Riddle & Gianna, Edith H. Morris, Law Office of Edith H. Morris, New Orleans, LA, Suzette Marie Smith, Law Office of Suzette Marie Smith, Metairie, LA, Counsel for Plaintiff/Appellee.
Shelley Hammond Provosty, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., Michael A. Mcnulty, Jr., Mcnulty & O'Connor, Gwendolyn M. Hanhart, Law Offices of Gwendolyn M. Hanhart, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge JAMES F. McKAY III, and Judge DENNIS R. BAGNERIS, SR.
Chief Judge WILLIAM H. BYRNES, III.
In this consolidated appeal, Sarah Holy-field Hansel appeals Judge Belsome's January 7, 2000 judgment reducing the former husband, Stephen Hansel's child support and other payments, as well as Judge Ledet's April 20, 2000 judgment granting the *878 former husband's exception of res judicata. We affirm in part, amend in part, and reverse in part.
The parties were married on November 16, 1985, and the couple had two children, Alex, born in September 1987, and Nicholas, born in October 1992. Stephen Hansel was president and CEO of Hibernia Bank. In connection with the divorce proceeding, the parties entered a consent judgment on April 24, 1997, which provided for child support cash payments of $11,800 per month and cash alimony payments of $6,350 per month. The divorce was granted on June 25, 1997, and Sarah Hansel continued to live with the two children in the family home at 1907 Palmer Avenue.
According to the consent agreement, Stephen Hansel stopped making cash alimony payments at the end of 1997. At that time Stephen Hansel paid Sarah Hansel $750,000 in cash as an advance on her share of the community partition. On January 2, 1998, Stephen Hansel filed a rule to show cause why alimony should not be terminated, or in the alternative, decreased, and why child support should not be decreased. Stephen Hansel claimed that there had been a change in circumstances because of the $750,000 and $387,500 cash distributions and because the youngest child, Nicholas, was five years old on October 20, 1997. Stephen Hansel wanted to terminate the direct payments in the consent judgment.[1] He also requested that Sarah Hansel be ordered to render accountings for child support.
Judge Belsome's January 7, 2000 judgment stated that the alimony rule was moot and the other rules were granted as per the reasons appended to the judgment. The judgment declared that:
(1) Stephen Hansel was granted a reduction in base child support for a payment of $6,500 per month;
(2) Stephen Hansel was to continue to pay for the children's tuition, related school expenses, child health care costs and summer camp fees; and
(3) Sarah Hansel was to provide Stephen Hansel with quarterly reports accounting for expenditures of child support monies paid by Stephen Hansel.
Stephen Hansel filed a motion for a partial new trial on January 17, 2000 to clarify the wording of the judgment regarding alimony.
Sarah Hansel asserts that Judge Belsome's judgment was silent with respect to Stephen Hansel's payments to maintain the community residence and to his payment of one-half of the monthly mortgage note for 1907 Palmer Avenue. Stephen Hansel stopped paying these amounts since the January 7, 2000 judgment.
*879 After Sarah Hansel filed a motion to enforce the April 27, 1997 Consent Judgment, Stephen Hansel filed an exception of res judicata, based on his claim that Judge Belsome's judgment terminated the payments at issue. At the hearing, Judge Ledet, initially denied Stephen Hansel's exception of res judicata and granted Sarah Hansel's motion to enforce the consent judgment. She also granted the motion for new trial, by consent of the parties, ordering that the alimony was terminated.
At a status conference on April 18, 2000, Judge Ledet advised counsel that she spoke to Judge Belsome following her ruling. Judge Belsome indicated he intended to terminate the direct payments at issue, and therefore Judge Ledet vacated her ruling of April 12, 2000. Judge Ledet signed the judgment on April 18, 2000. She granted Stephen Hansel's motion for new trial as to the judgment that she had granted ex parte. Thereafter, Judge Ledet signed an order dated April 20, 2000, in which she granted Stephen Hansel's exception of res judicata. Sarah Hansel appealed Judge Belsome's January 7, 2000 judgment reducing child support and other payments, as well as Judge Ledet's April 20, 2000 judgment granting Stephen Hansel's exception of res judicata. The two appeals were consolidated.
On appeal, Sarah Hansel contends that in his January 7, 2000 judgment, Judge Belsome erred in: (1) finding that a change of circumstances existed to warrant a re-evaluation of child support; (2) failing to find good cause for making the child support reduction prospective; (3) failing to address the issue of modification of the terms of the consent judgment as to the direct payments relative to 1907 Palmer Avenue; and (4) ordering Sarah Hansel to make a quarterly accounting pursuant to La. R.S. 9:312. Sarah Hansel also maintains that Judge Ledet erred in: (5) granting Stephen Hansel's exception of res judicata and vacating her original judgment that granted Sarah Hansel's motion to enforce the consent judgment as to the direct payments relative to 1907 Palmer Avenue.

Standard of Review
The party seeking modification of a consent judgment has the burden of proving that there has been a change in circumstances from the time of the award and the time of the motion for modification of the award. Riggs v. LaJaunie, 98-304 (La.App. 3 Cir. 10/7/98), 720 So.2d 114; Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762. In arriving at a child support award, the totality of relevant circumstances must be considered. Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4 Cir. 4/26/95) 654 So.2d 877, writ denied, 95-1320 (La.9/1/95), 658 So.2d 1266. The trial court has great discretion in decisions concerning modification of child support decrees, and such decisions will not be disturbed on appeal absent a clear abuse of discretion. La. R.S. 9:311(A); Young v. Young, 95-1154 (La.App. 3 Cir. 4/17/96), 673 So.2d 1154; Rosenbloom, supra.

Change in Circumstances
Sarah Hansel argues that Stephen Hansel failed to prove a change in circumstances sufficient to justify a modification of the child support award set out in the consent judgment. Sarah Hansel contends that Judge Belsome erred in awarding Stephen Hansel a decrease in cash child support from $11,800 to $6,500 per month. Stephen Hansel claims that the change of circumstances is based on the fact that his younger son reached the age of five under La. R.S. 9:315.9, and Sarah Hansel received his $750,000 cash payment and another cash payment of $387,500 in September 1998, pursuant to another partial partition of community stock options.
*880 The parent who seeks a modification of the child support award pursuant to the divorce is required to show change, rather than a substantial change, under the circumstances. La. R.S. 9:311, C.C. art. 142; Stogner v. Stogner, supra, 739 So.2d 762. In Stogner, 739 So.2d at 769, the Louisiana Supreme Court noted that: "a change in circumstances is a change material to the well-being of the child and his or her support that has occurred since the rendering of the original award." If the combined adjusted gross income of the parents exceeds the highest sum on the schedule of the state child support guidelines, the court has the discretion in setting the basic child support obligation. La. R.S. 9:315.10, subd. B; Zatzkis v. Zatzkis, 632 So.2d 307 (La.App. 4 Cir.1993), writ denied, 94-0157 (La.6/24/94), 640 So.2d 1340, and writ denied, 94-0993 (La.6/24/94), 640 So.2d 1341. The trial court must consider the totality of circumstances of each case in rendering an award of child support. Ecklund v. Ecklund, 513 So.2d 383 (La. App. 4 Cir.1987); Massingill v. Massingill, 564 So.2d 770 (La.App. 2 Cir.1990).

Sarah Hansel's Employment
Sarah Hansel claims that the trial court erred in finding that she was underemployed in order to compute her earning potential now that the youngest child is over the age of five, creating a change of circumstances.
La. R.S. 9:315.9 provides:
§ 315.9. Voluntarily unemployed or underemployed party
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child support obligation obtained by use of this Section shall not exceed that amount which the party paying support would have owed had no determination of the other party's earning income potential been made.
The court shall consider his or her earning capacity in light of all the circumstances. Rovira v. Mire, 587 So.2d 149 (La.App. 4 Cir.1991). Voluntary underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. Gould v. Gould, 28,996 (La.App. 2 Cir. 1/24/97), 687 So.2d 685.
Consideration should be taken that a child of divorced or separated parents is entitled to the same standard of living as if he resided with the father whenever the father's financial circumstances permit. Fraser v. Fraser, 531 So.2d 1097 (La.App. 4 Cir.1988); Zatzkis v. Zatzkis, supra. In Long v. Rebouche, 29,204 (La.App. 2 Cir. 2/26/97), 690 So.2d 894, the Second Circuit found that the father was not voluntarily unemployed, for purposes of determining whether to impute income to him in computing his child support obligation, absent a showing that his new business was started in bad faith to decrease the amount of his child support payments.
Stephen Hansel maintains that Sarah Hansel should have been assessed with the income capacity of a bank position with an entry salary of $45,000 to $60,000. Sarah Hansel has a degree from Duke University in accounting and history. Before the marriage, she was employed in the banking industry in Florida. When she left in 1986, she was earning $28,000. Sarah Hansel left the work force, got married, and raised Stephen's children from his former marriage, and later the couple's two children.
Sarah Hansel testified that she has been out of the banking business since 1986. She would need to be retrained. She pointed out that now banking officers have graduate business degrees, and she would *881 need to return to school to get a masters degree.
Sarah Hanson testified that she is interested in providing financial services to clients in the music business. In 1997, she took a course at Loyola University and attended seminars and workshops. She wrote a paper for the Loyola College of Music on uses of a computerized system for a record label. To gain experience, without pay, she has helped two local record labels in customizing computer programs for their finances and accounting in the music business. In starting her own financial business, she is still learning the music industry but she expects to have income from this business. She also has been working part-time producing a television show for Victory Fellowship Church.
Stephen Hansel acknowledged that he agreed that during their marriage, Sarah Hansel should quit her banking employment to stay at home to raise the two eleven-year-olds from his first marriage. The parents' own two children had a full-time nanny while Stephen and Sarah Hansel were married. Considering that Sarah and Stephen Hansel's children's lifestyle included a mother who stayed at home, as well as a nanny, Sarah Hansel is not underemployed under the circumstances of this case although Sarah Hansel has not found full-time employment. There is no showing that Sarah Hansel started her new business in bad faith to avoid her child support obligation.

Sarah Hansel's Receipt of Cash Payments as Partial Partition of Community Property
Sarah Hansel argues that there was no change in circumstances to support a decrease in Stephen's child support payments based on the fact that she received case payments for partial partition of the community property.
In Clement v. Clement, 506 So.2d 624 (La.App. 4 Cir.1987), this Court found that the trial court may consider the portion of the community property partition that the former wife received when reviewing the former wife's entitlement to child support. See also Osborne v. Osborne, 512 So.2d 645 (La.App. 2 Cir.1987). The receipt of community assets does not necessarily constitute a change in circumstances to eliminate support. Dabney v. Dabney, 603 So.2d 786 (La.App. 1 Cir.1992), writ denied 607 So.2d 563 (La.1992). In Langley v. Langley, 98-2759 (La.App. 4 Cir. 11/10/99), 747 So.2d 183, this Court found that the termination of alimony could be considered when determining whether there is a sufficient change in circumstances to alter the child support payments.
If a former spouse's gross monthly income exceeds $10,000, child support should be judged on a case-by-case basis without a mathematical formula, including one that simply extrapolates from the maximum amount listed; the circumstances of the parents and the child's best interest are the determinative considerations, and the parents' ability to pay and the lifestyle that the child otherwise would enjoy if the parents had not separated are important considerations. La. R.S. 9:315.10, subd. B, 9:315.14, subd. B; State v. Baxter, 33-188 (La.App. 2 Cir. 5/10/00) 759 So.2d 1079. The best interest of the children must be considered in exercising the discretion to determine the child support obligation when the parties' income is greatly in excess of the child support guidelines. Colvin v. Colvin, 94-2143 (La. App. 1 Cir. 10/6/95), 671 So.2d 444, writ denied, 95-2653 (La.1/5/96), 667 So.2d 522.
In 1997 Stephen Hansel's taxable income, primarily consisting of a salary and bonus from Hibernia Bank was $878,616. In 1998, his taxable income, which included *882 a performance share award, increased to $2,129,700. Without the performance share award, Stephen Hansel's 1998 taxable income totaled $1,110,700 for an increase of $232,084. His projected taxable income for 1999 was $1,488,168, which was a $377,468 increase over 1998, minus the performance share award. Stephen Hansel anticipated a reduction in his bonus for the year 2000; however, the year 2000 earnings are not considered because only the evidence of his income for 1998 and 1999 are relevant from the time of the 1997 consent judgment until the time of Stephen Hansel's rule to reduce child support.
In Abbott v. Dunlap, 541 So.2d 995 (La. App. 3 Cir.1989), writ denied, 544 So.2d 403 (La.1989), the father was not entitled to a decrease in child support where the wife's income was inconsequential in comparison to his. The mother's day-to-day care of the minor child was also to be considered in review of her contribution to support.
In Mortillaro v. Mortillaro, 540 So.2d 1298 (La.App. 5 Cir.1989), the father's income and corresponding expenditures, and the needs of the children, did not warrant a decrease in the father's child support payments, despite the father's assertion that his income had substantially decreased since the previous hearing, which resulted in an increase of his child support payments ordered under the consent judgment. The father's life style had not been curtailed and his ability to earn a substantial income was present. The Fifth Circuit held that when there was a direct conflict between the children's level of accustomed living and the parent's desire for reduction in child support because of income, it was the parent's life-style that must be affected downward, not the children's.
In Falterman v. Falterman, 97-192 (La. App. 3 Cir. 10/8/97), 702 So.2d 781, writ denied, 98-0076 (La.3/13/98), 712 So.2d 863, the Third Circuit found that the child support award rendering the father responsible for 95 percent of the children's monthly expenses, when he earned 95 percent of the parties' adjusted gross income, was not abusively high or low.
In the present case, although Sarah Hansel was awarded a partial partition of the community, she also no longer receives the cash alimony. The cash payments as partial partition of the community property received by Sarah Hansel are offset by her loss of alimony as income.
In the present case, an award of $1,616.81 per month represented less than ten percent of the father's gross monthly income and would provide the children with the benefit of a lifestyle which they otherwise would have had if her parents had not divorced. La. R.S. 9:315.10, subd. B, 9:315.14, subd. B. Although the former husband may have less resources after the former wife received a partial partition cash settlement, the settlement amount did not reduce his ability to pay and maintain his current level of child support. There is no evidence that the amount of child support was causing the former husband any financial hardship. The fact that the former husband bought and renovated a home in Audubon Place, indicates that his lifestyle has not suffered.
The trial court stated that: "This Court is convinced that the base monthly child support payments in the amount of $6,5000 per month will more than adequately sustain the basic needs of the Hansel children." [Emphasis added.] The trial court used the wrong standard in determining that the father's child support payment should be reduced. Rather than providing for the basic needs, the standard is whether the father could provide the children with the benefit of a lifestyle which they *883 otherwise would have had if their parents had not divorced.
The father did not show a change material to the well being of the children and their support that has occurred since the rendering of the consent judgment. The father's income is sufficient to allow for the children to be maintained at the affluent level applicable prior to the divorce. The trial court clearly abused its discretion in reducing Stephen Hansel's monthly cash child support from $11,800 per month to $6,500 per month. Stephen Hansel's monthly cash child support payments should remain the same as in the consent judgment, i.e., $11,800. He should also continue to pay for the children's tuition, related school expenses, child health care costs and summer camp fees as child support pursuant to the consent judgment and the January 7, 2000 judgment.
The fact that the child support payments in the consent judgment are unchanged, precludes a review of Sarah Hansel's claim that any changes should not be retroactive.

Res Judicata
Sarah Hansel contends that the husband should continue to pay the consent judgment's itemized list relative to the upkeep of the Palmer Avenue property. She asserts that the payments for the security and upkeep of the home are part of Stephen Hansel's obligation to protect the community assets prior to the partition of the property. Sarah Hansel avers that Stephen Hansel should continue to make these payments until the partition of the community is final.
Stephen Hansel argues that he should not have to pay Sarah's car insurance, her health insurance, and unreimbursed medical expenses as set out in the consent judgment. We agree that these payments constituted alimony. However, Stephen Hansel submits that payments for tree service, household repairs, and the other payments for the upkeep of 1907 Palmer Avenue are not child support, and he should not be required to pay them.
Sarah Hansel asserts that Judge Belsome's January 7, 2000 judgment reducing support did not mention the special payments with respect to the security and upkeep of the Palmer Avenue property, and that therefore, Judge Ledet erred in granting her former husband, Stephen Hansel's exception of res judicata in the April 20, 2000 judgment.
The doctrine of res judicata does not apply to judgments in divorce proceedings awarding custody and child support; such judgments are always subject to modification and, thus, are never final. La. R.S. 13:4231; Kleiser v. Kleiser, 619 So.2d 178 (La.App. 3 Cir.1993). However, the exceptions to the doctrine of res judicata in divorce actions are provided in La. R.S. 13:4232, which states, in pertinent part, that in a divorce action, "the judgment has the effect of res judicata only as to causes of action actually adjudicated." Under this civilian theory of res judicata, "only matters actually litigated and finally adjudged may not be contradicted later." Ebey v. Harvill, 26,373, p. 2 (La.App. 2 Cir.12/7/94), 647 So.2d 461, 463.
With respect to Judge Belsome's January 7, 2000 judgment, when the judgment and reasons for judgment conflict, the judgment controls unless an abuse of discretion is clearly found. Zatzkis v. Zatzkis, supra; Thurman v. Thurman, 521 So.2d 579 (La.App. 1 Cir.1988); Lutz v. Jefferson Parish School Bd., 503 So.2d 106 (La.App. 5 Cir.1987), appeal after remand, 565 So.2d 1071 (La.App. 5 Cir.1990).
In the present case, Judge Belsome's January 7, 2000 judgment stated that: "The alimony rule is moot and all other *884 rules are granted as per the reasons appended to this Judgment." [Emphasis added.] Stephen Hansel asserts that this part of the judgment is sufficient to show that the trial court granted the husband's request for modification of the direct payments. Although the judgment itself does not detail what rules to which it is referring, the January 7, 2000 judgment has made a ruling that refers to the reasons for judgment. The trial court also found that the alimony rule was moot.
Regardless of whether Judge Belsome's January 7, 2000 judgment specifically set out a reference to the direct payments for the upkeep of the Palmer Avenue home, or whether the judgment is res judicata as found in Judge Ledet's judgment of April 20, 2000, both judgments have been appealed. The record provides adequate information upon which to review the issue of the direct payments for the Palmer Avenue property and to determine whether the trial court erred in the two judgments.
Sarah Hansel does not contest that Stephen Hansel's payments of the security and upkeep of the Palmer Avenue home are not child support. Sarah Hansel asserts that they were made to maintain the community property. Therefore, those payments are required until the partition of the community property is final.
As co-owners, the spouses have an obligation to maintain and preserve the community property regime. Patin v. Patin, 462 So.2d 1356 (La.App. 3 Cir.1985); Williams v. Williams, 509 So.2d 77 (La. App. 1 Cir.1987); Goldberg v. Goldberg, 698 So.2d 63 (La.App. 4 Cir. 7/23/97).
The April 24, 1997 consent judgment provided in part that:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Husband will also pay any and all ad valorem taxes on the real property identified by municipal numbers 1097 Palmer Avenue in the City of New Orleans, State of Louisiana, until the partition of the community property regime either by final judgment therein or by a settlement and compromise; which payment shall be made without any right to any reimbursement from Wife in connection therewith. Husband shall receive the benefit of any tax deduction for the payment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Husband will arrange, be responsible for and/or pay the cost of the maintenance of the current security system at the family residence identified by municipal numbers 1907 Palmer Avenue, including but not limited to the monthly monitoring fees in connection therewith. Furthermore, Husband shall arrange, be responsible for and/or pay the cost of the maintenance of the current outside security lighting at the aforesaid residence and the driveway gate and garage door maintenance.... Husband shall not have any claim to reimbursement from Wife in connection therewith.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Husband will pay the expenses for any and all tree services on the real property identified by municipal numbers 1907 Palmer Avenue in the City of New Orleans, as any such tree service may deemed necessary by Wife; provided, however, said expense shall not exceed $1,500.00 per year. Husband shall not have any claim to any reimbursement from Wife in connection therewith. Wife shall also not have any claim for reimbursement in connection therewith.
* * *
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Husband *885 will pay any and all major house repairs that may occur and be necessary. A major repair is hereby defined as being any repair in excess of $500.00. However, Husband shall have the right of reimbursement at the time of the partition of the community in connection therewith. [Emphasis added.]
Stephen Hansel also agreed to maintain the property insurance. Each spouse was responsible for one-half of the monthly mortgage payments for 1907 Palmer Avenue without any claim of reimbursement.
The trial on the partition of the community property was held in April and May, 1998, with a judgment issued on January 25, 1999. The partition judgment was not final because Stephen Hansel appealed the judgment. This Court affirmed the trial court's judgment in part, reversed in part, and rendered in part in Hansel v. Holyfield, XXXX-XXXX (La.App. 4 Cir. 12/27/00), 779 So.2d 939, writs denied, XXXX-XXXX & 0279 (La.4/12/01), 789 So.2d 591. This Court's opinion on the partition of the community property was final upon the Louisiana Supreme Court's denial of writ applications on April 12, 2001.
In his reasons for judgment, Judge Belsome states: "the Court renders judgment in favor of the reduction sought by Mr. Hansel, with the additional expenses to be paid as outlined above." Those additional expenses included the child health care, tuition and school expenses as well as summer camp fees as stated in the judgment.
It is clear that the former husband's payments of the former wife's medical expenses and insurance constitute alimony. The order of a change in alimony is retroactive to the date of filing of the action, i.e., the date of judicial demand unless the court finds good cause for not making an award retroactive and then fixes the date the award is to become effective. Lloyd v. Lloyd, 94-0421 (La.App. 1 Cir. 12/22/94), 649 So.2d 32. In the present case the effective date is January 2, 1998 on which Stephen Hansel ceased being responsible for these alimony payments.
The trial court clearly abused its discretion in failing to determine that the other expenses were for the preservation of the community. The consent judgment uses language with respect to the expenses for taxes to be paid "until the partition of the property regime," as well as "maintenance", house "repairs", and services "on the real property." This language indicates that the obligations were for the preservation of the community property pending its partition. Generally, the spouse is entitled to reimbursement for one-half the amount of the spouse's separate property used to satisfy the community obligation, i.e., mortgage principal, interest, property taxes, and insurance, since the date of the termination of the community. La. C.C. 2365; Williams v. Williams, 590 So.2d 649 (La.App. 3 Cir. 1991). In the present case, the termination of the community was November 7, 1996, the date that Stephen Hansel filed for divorce. The parties' claims for their respective expenditures related to community property are proper considerations in determining the community property settlement in the partition by licitation. Gilley v. Ketchens, 478 So.2d 638 (La.App. 2 Cir.1985).
In the present case, the parties negotiated and agreed to the payments set forth in the consent judgment. That agreement took into account allocations to the parties for community property expenses. The payments for the Palmer Avenue home set out in the consent judgment were not child support, but were for the preservation of the community property pending the partition. *886 Stephen Hansel is required to make the payments for the security and upkeep of Palmer Avenue before April 12, 2001, the date that the partition of the community became final. He must reimburse Sarah Hansel for any payments for the preservation of the Palmer Avenue property, including his one-half of the mortgage payments made prior to April 12, 2001 if he has not made these payments previously. According to the consent judgment, Sarah Hansel must reimburse Stephen Hansel for major repairs to 1907 Palmer Avenue over $500 prior to April 12, 2001, if she has not made these payments previously.
Because in its April 20, 2000 judgment, the trial court clearly erred in respect to the payments for preservation of 1907 Palmer Avenue, the April 20, 2000 judgment ruling that the prior January 7, 2000 judgment was res judicata is also reversed.

Accounting
Sarah Hansel complains that the trial court erred in finding that she should provide Stephen Hansel with an accounting of her spending. She testified that she spent some of the cash from the partial partition of the community to live on. She did not spend the money allocated for the children's support. She has invested some of the money in short-term money market facilities to have access to cash. She has spent a substantial amount for legal fees. She points out that according to his 1998 income tax form, Stephen Hansel gave $95,000 in donations to charities. Therefore, she maintains that her donations to the Victory Fellowship Church are comparable to his donations so the donations for the children are not excessive. However, Stephen Hansel did not make charitable donations in the name of the children.
In his reasons for judgment, Judge Belsome stated that: "Particularly disturbing are the charitable donations made on behalf of the children, which exceed $85,000 for 1998 and 1999." The trial judge found that the mother's charitable donations on behalf of the children "constitute spousal lifestyle support rather than child support." We agree. Because the charitable contributions were not child support, Stephen Hansel should be reimbursed for the amounts of the charitable donations made by Sarah Hansel on behalf of the children. Further, Sarah Hansel should provide Stephen Hansel with quarterly reports accounting for the expenditures of child support monies paid by Stephen Hansel.

Summation
Judge Belsome's January 7, 2000 judgment and Judge Ledet's April 20, 2000 judgment are affirmed in part, amended in part and reversed in part.
To reiterate, Stephen Hansel payments for Sarah Hansel's medical expenses and insurance constitute alimony. The alimony payments are terminated. Stephen Hansel's is not required to pay these expenses retroactive to the date of Stephen Hansel's judicial demand, the date of the filing of the action, i.e., January 2, 1998.
Stephen Hansel shall continue to pay the direct child support monthly payments in the amount of $11,800. Stephen Hansel also shall continue to pay the children's tuition, related school expenses, child health care costs and summer camp fees. Included in the children's private school tuition are the costs of registration, book fees, homework incentive bonuses, transportation, food programs and the like. Sarah Hansel shall reimburse Stephen Hansel for any charitable contributions that she donated on behalf of the children as they do not constitute child support expenses but were spousal support or alimony payments, which were terminated as of January 2, 1998.
Further, pursuant to the consent judgment, Stephen Hansel must make the payments *887 for the security and upkeep of Palmer Avenue before April 12, 2001, the date that the partition of the community became final. These include payments for maintenance and fees on the security system, lights, driveway, gate and garage door for 1907 Palmer; all expenses for tree services at 1907 Palmer Avenue; one-half of the monthly mortgage note for 1907 Palmer Avenue; property taxes as well as insurance on 1907 Palmer Avenue; and major repairs on 1907 Palmer Avenue. Stephen Hansel must reimburse Sarah Hansel for any payments for the preservation of the Palmer Avenue property pursuant to the consent judgment, including his one/half of the mortgage payments prior to April 12, 2001, if he has not made these payments previously. Sarah Hansel must reimburse Stephen Hansel for major repairs to 1907 Palmer Avenue prior to April 12, 2001, if she has not made these payments previously.
Finally, Sarah Hansel shall provide Stephen Hansel with quarterly reports accounting for the expenditures of child support monies paid by Stephen Hansel.
AFFIRMED IN PART; AMENDED IN PART & REVERSED IN PART.
NOTES
[1] In the consent judgment Stephen Hansel was to pay the following itemized expenses:

(a) Maintenance and fees on the security system, lights, driveway, gate and garage door for 1907 Palmer;
(b) All expenses for tree services at 1907 Palmer Avenue;
(c) All premiums to maintain automobile insurance, property and casualty insurance, personal property insurance, excess or umbrella insurance, health and life insurance;
(d) All deductibles, co-payments, and non-reimbursed medical expenses, including, but not limited to, dental, orthodonture and expenses for eyeglasses and contact lenses;
(e) All of the children's private school tuition, registration, book fees, homework incentive bonuses, and transportation;
(g) One-half of the monthly mortgage note for 1907 Palmer Avenue;
(h) Property taxes on 1907 Palmer Avenue; and
(i) Major repairs on 1907 Palmer Avenue.