[.MICHAEL E. KIRBY, Judge.
Plaintiff, Stephen Hansel, appeals the August 30, 2002 trial court judgment denying his motions to reduce his child support obligations, and the pre-trial ruling holding that the issue of his former wife’s employa-bility is res judicata. His former wife, Sarah Holyfield Hansel, answered the appeal, asking that the trial court judgment be upheld, or, alternatively, that the judgment be modified on the issues of her responsibility for 15% of the children’s extraordinary expenses and the retroactivity of the trial court judgment. We affirm the trial court judgment and the pre-trial ruling appealed from for reasons stated below.
The history of this litigation is set forth in this Court’s previous decisions in Hansel v. Holyfield, 2000-0062 (La.App. 4 Cir. 12/27/00), 779 So.2d 939, and Hansel v. Hansel, 2000-1914 (La.App. 4 Cir. 11/21/01), 802 So.2d 875. In the instant matter, Stephen seeks to reduce his child support obligations from the amount originally set by the parties’ consent judgment of April 24, 1997. That judgment and a subsequent amendment ordered Stephen to pay Sarah monthly child support of $11,800.00, and 100% of the two minor children’s private school tuition and related school expenses, medical insurance, child health care costs not covered by insurance, and summer camp fees.
^Stephen previously sought a reduction of his child support obligations in 1998. *890 The trial court granted Stephen’s motion to reduce child support, but this Court found that the trial court abused its discretion in granting this reduction, and reinstated the amounts owed under the 1997 consent judgment. See, Hansel v. Hansel, 2000-1914 (La.App. 4 Cir. 11/21/01), 802 So.2d 875.
Since the time that Stephen filed his first motion to reduce child support, the parties have partitioned their community property, which included exercised stock options from Stephen’s former employment with Hibernia National Bank. The net proceeds from the exercise of the stock options alone were approximately $14,000,000.00 for Stephen and $7,000,000.00 for Sarah. Amazingly, the matter currently before us is not about increasing the amount of support for the minor children; it involves a request by Stephen for a reduction in the amounts owed by him for child support even though the amount he currently pays was set prior to his receipt of at least fourteen million additional dollars.
In his current motion to reduce child support, Stephen alleges the following grounds in support thereof: 1) Sarah had a change in financial circumstances in July 2001 when she received approximately $7,000,000 in “investable assets” in their partition of community property; 2) the youngest child reached the age of five, and thus Sarah could seek employment outside of the home; and 3) Stephen’s financial circumstances changed, as he is no longer president and CEO of Hibernia Corporation/Hibernia National Bank and has not been able to find equivalent employment. Stephen argues that he is not seeking to reduce the children’s lifestyle; rather, he seeks to equitably apportion the child support expenses between Sarah and himself.
| aAfter a lengthy trial of this matter, which included six days of testimony from the parties, their accountants and experts in financial planning and investing, the trial court denied Stephen’s motion to reduce his monthly child support obligations, but the court apportioned to Sarah 15% of the tuition and related school expenses, uninsured child health care costs, and summer camp fees. Because these expenses were previously assessed completely to Stephen, the judgment effectively granted relief to Stephen by reducing the overall amount of the children’s expenses for which he is responsible.
Nonetheless, Stephen appealed the August 30, 2002 judgment, arguing that the trial court erred in failing to grant his motion to reduce child support, and in excluding evidence of Sarah’s employability by holding that the issue was res judi-cata. In arguing that the trial court erred in failing to grant his motion to reduce child support, Stephen sets forth the following specific arguments: a) the trial court made a legal error in finding Sarah’s assets to be legally insignificant; b) the court erred in finding Stephen’s assets to be $23,000,000.00; c) the court made a legal error in not requiring Sarah to bear her proportionate share of all the child support expenses, rather than just requiring her to bear a small portion of the expenses of tuition, uninsured medical expenses and camp fees; d) the court made a legal error in failing to allocate the total child support expenses in proportion to the ability of the respective parties to earn income; e) the court made a legal error in denying a reduction on the basis that Stephen could afford to pay the amounts set forth in the original judgment; f) the court made a legal error in allowing Sarah to include, as an expense of the children, the excess cost of her self-chosen ten year mortgage; and g) the court made a legal error by, in effect, ordering Stephen not to *891 return to court on the subject of child support for three years.
|4We initially note that the August 30, 2002 trial court judgment simply denied Stephen’s motions to decrease child support and ordered Sarah to assume responsibility for 15% of the children’s tuition, related school expenses, uninsured health care costs and summer camp fees. Most of the factual and legal errors alleged by Stephen are based on statements made by the trial court in its written reasons for judgment. Appeals are taken from the judgment, not the written reasons for judgment. Greater New Orleans Expressway Commission v. Olivier, 2002-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24; Kern v. Kern, 2000-1126 (La.App. 4 Cir. 4/25/01), 786 So.2d 193.
Stephen argues that Sarah’s circumstances have materially changed since the time of the previous award because she has received several million dollars in assets when there was a partition of the community property, which included Hibernia Corporation stock options that were exercised by the parties. Stephen further argues that with at least seven million dollars in “investable assets,” Sarah now has the ability to pay a proportionate share for the children’s support, and Stephen’s share should be reduced by Sarah’s proportionate share.
La. C.C. article 141 states, in pertinent part, as follows:
In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support.
The determination of child support is based on the rules set forth in La. R.S. 9:315 et seq. La. R.S. 9:315.2(0, regarding calculation of the basic child support obligation provides as follows:
The parties shall combine the amounts of their adjusted gross incomes. Each party shall then determine by percentage his or her proportionate share of the | ^combined amount. The amount obtained for each party is his or her percentage share of the combined adjusted gross income.
However, La. R.S. 9:315.13(B) states:
If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.19, the court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule.
It is undisputed that the combined adjusted gross income of the parties in this case exceeds the highest level specified in the schedule in R.S. 9:315.19.
We note that the child support guidelines set forth in La. R.S. 9:315 et seq., use both parents’ income in determining the amount of the child support obligation. Throughout these proceedings, Stephen has incorrectly used the word “assets” interchangeably with the word “income.”
Stephen relies on the Second Circuit case of Schult v. Schult, 36,283 (La.App. 2 Cir. 8/28/02), 827 So.2d 465, in support of his position that Sarah’s assets acquired since the time of the original child support award should be considered in assessing her ability to provide for the children. The Schult case is distinguishable from the facts of the instant case. In Schult, the Second Circuit affirmed the trial court’s finding that the father’s investment portfolio produced income and included that income in determining that the father’s in *892 come exceeded $10,000.00 per month so as to justify deviation from the child support guidelines under La. R.S. 9:315 et seq.
The standard for modification of a child support award is set forth in La. C.C. article 142 and La. R.S. 9:311(A). La. C.C. article 142 states:
RAn award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary.
La. R.S. 9:311(A) provides that:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a material change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
The trial court has great discretion in decisions concerning modification of child support decrees, and such decisions will not be disturbed on appeal absent a clear abuse of discretion. Hansel v. Hansel, 2000-1914, p. 4 (La.App. 4 Cir. 11/21/01), 802 So.2d 875, 879.
In this case, the financial circumstances of both parties improved substantially through the exercise of the Hibernia Corporation stock options, which were included in the community property partition. The most conservative view of the evidence shows that Stephen received net liquid assets of approximately $14,000,000.00 and Sarah received net liquid assets of approximately $7,000,000.00 in the community property partition.
As stated above, the party seeking modification of child support has the burden of proving that one of the parties has had a material change in circumstances since the time of the previous award. We find, as did the trial court, that Stephen has not carried his burden of proving a material change in circumstances so as to justify a reduction of $11,800.00 monthly child support obligation. While the financial circumstances of both parties improved substantially due to the exercise of the stock options, the relative positions of the parties remained the same. The change in Sarah’s financial circumstances, while 17substantial, is modest when compared to the much more dramatic improvement in Stephen’s financial circumstances since the original award.
However, even though Stephen did not prove that Sarah has had a material change in circumstances sufficient to warrant a modification of his monthly child support obligation, the evidence supports the trial court’s decision to assess 15% of the children’s tuition and other extraordinary expenses to Sarah. Therefore, the trial court’s assessment of this amount to Sarah was reasonable.
Many of Stephen’s arguments seem to have less to do with proving a material change of circumstances to justify a modification of his child support obligation, and more to do with his disapproval of many of Sarah’s financial decisions made since the 1997 consent judgment, including mortgage refinancing decisions, investment decisions and charitable contributions. In 2001, Sarah refinanced her home mortgage for a ten-year period. This occurred six years into the term of the previous home mortgage. Stephen argues that the ten-year mortgage unfairly benefits Sarah because the house, which is in Sarah’s name alone, will be almost paid for when the youngest child turns eighteen. This is not proof of a material change in circumstances to justify reducing his child support obligation even though the monthly mortgage note for a ten-year mortgage is greater than a monthly note on a thirty-year mortgage would be.
*893 Furthermore, Stephen has not made a sufficient showing that the amounts paid by him in child support are being used for purposes other than providing for the children. The children are entitled to the same lifestyle they would have enjoyed if their parents had not divorced. The home maintenance expenses listed by Sarah, while certainly high, are reasonable when considering that the house in which the children have lived with their mother since their parents’ divorce and lswith both of their parents prior to the divorce is a 6,675 square foot house with surrounding grounds, all requiring significant maintenance and repair. Therefore, Sarah’s use of child support for the portion of these expenses allocated to the children is appropriate.
In addition to appealing the trial court’s August 30, 2002 judgment denying his motions to decrease child support, Stephen also appeals the trial court’s pre-trial ruling excluding evidence of Sarah’s em-ployability by holding that the issue was res judicata. The trial court subsequently denied Stephen’s motion for new trial taken from that ruling.
Sarah correctly argues that Stephen’s 2002 Second Amended Motion regarding Sarah’s employment status does not allege any significant circumstances that have changed since the issue was last considered in 1998, and which this Court addressed in Hansel v. Hansel, 2000-1914 (La.App. 4 Cir. 11/21/01), 802 So.2d 875. Therefore, the previous ruling that Sarah is not underemployed, which was affirmed by this Court in the 2001 decision, is res judicata.
The trial court’s denial of Stephen’s motion to reduce child support and its pretrial ruling that the issue of Sarah’s em-ployability is res judicata are not manifestly erroneous. For the reasons stated above, the trial court’s August 30, 2002 judgment and the May 21, 2002 pre-trial ruling and September 9, 2002 denial of the motion for new trial filed in response thereto are affirmed.
AFFIRMED.