NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the marriage of:

ROBERT L. KERN, *Petitioner/Appellee,*

*v.*

JENNIFER KERN, *Respondent/Appellant.*

No. 1 CA-CV17-0119 FC
FILED 4-5-2018

Appeal from the Superior Court in Maricopa County
No. FC2015-008842
The Honorable Timothy J. Thomason, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Modern Law, Mesa
By Billie Tarascio, Stanley D. Murray
*Counsel for Respondent/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Philip C. Gerard, Helen R. Davis
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jennifer M. Perkins joined.

---

T H O M P S O N, Judge:

**¶1**         Jennifer Kern ("mother") appeals from the family court's judgment in this dissolution matter. Mother asserts the family court's child support determination, the distribution of separate and community property as well as community debts, and the apportionment of attorneys' fees were an abuse of discretion. After a review of the issues on appeal, we affirm as to the division of property and debts and reverse as to the child support award and attorneys' fees award.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**         Mother and Robert L. Kern ("father") (mother and father are collectively         referred         to         as         "parents"         or "the parties"), met when she was working for his company. They had a daughter ("child") together in 2005 and were married in 2008; there was no prenuptial agreement. Father filed a petition for dissolution in November 2015. Parents reached select resolutions prior to trial, including as to the parenting schedule, certain assets, and temporary orders.[1]

**¶3**         As to the remaining issues, a trial was held, at which both parents and their five experts testified. The family court issued a 45-page order addressing spousal maintenance, child support, and the distribution of separate and community property as well as community debts.

**¶4**         At the outset, it must be noted that father is a person of significant personal wealth arising primarily from an inheritance of a large amount of Disney stock.[2] The Disney stock was originally obtained by

---

[1] The parties have engaged in mediation, arbitration, and ultimately a trial.

[2] Father held 430,214 shares of Disney stock at the time of marriage to mother.

father's family in the course of the sale of his grandfather's business to a company subsequently purchased by Disney. At the time of the parties' marriage, the value of father's stock portfolio exceeded $17 million. At the time of trial, father's stock portfolio was valued in excess of $44 million—88 percent of which was the legacy Disney stock. Father had practiced law and had also owned a business, but as of the time of trial, he had not worked a "regular" job since 2007. From his stock portfolio, father receives approximately $800,000 a year in dividends; the family lived off these funds.[3] Father also occasionally sold Disney stock as needed for additional cash.

¶5 The family court found the Kerns enjoyed an exceptionally high standard of living. "They had a large, expensive home in Paradise Valley. They travelled extensively. They bought expensive gifts. They sent the Child to expensive schools. The couple's lifestyle cost on average over $50,000 per month." Testimony from one expert placed monthly expenditures at $54,166—with spending at Disney facilities making up the second largest single budget item.[4]

¶6 The family court found that the Child Support Guidelines ("Guidelines") dictated father pay $538.29 monthly, but that circumstances dictated an upward deviation. Father volunteered to pay $1,000 a month in addition to health insurance and certain educational and recreational expenses.[5] The family court found that an award of $1,000 a month, in

---

[3] Father's adjusted gross income (including interest, dividends, and capital gains) for the four prior years prior to trial was:
2012 $1,048,582;
2013 $1,493,063;
2014 $1,144,920;
2015, $1,294,799.

[4] Mother testified that the family went to a Disney property 3-4 times per year and took 2 Disney Luxury Cruises per year. Mother's expert testified, without dispute, that the family spent approximately $36,000 a year on Disney-related trips.

[5] The cost of minor child's school tuition and recreational expenses were not explored at trial. Father testified that minor child's health insurance would cost $1,400 per month. Mother's affidavit of financial information listed minor child's pageant expenses at $16,000 per year.

addition to those expenses, was in the best interests of the child. This was a reduction from the $1,500 in child support set out in the temporary orders.

¶7 The family court found mother's reasonable monthly expenses to be $8,300 per month. Given the length of the marriage, mother's work history and work prospects, and that she was a stay-at-home mother during the marriage who now did not have sufficient property to meet her reasonable needs, the court awarded her spousal maintenance of $8,300 a month for two years, followed by three additional years of $6,000 maintenance per month.[6, 7] Father's expert testified that mother could return to full-time retail work and earn $31,000 a year; at the time of trial she was starting to work as a retail clerk at Tiffany's.

¶8 The nature of father's assets, whether sole and separate or community property, monopolized much of the hearing.[8] Father testified extensively regarding his financial accounts, stock holdings, and the manner in which he managed those accounts. He also testified as to his real estate holdings. Eventually, the family court found all of the stock/retirement/investment accounts to be father's sole and separate property.[9] In support of this finding, for example, it found that father was

---

[6] The stipulated temporary orders provided for spousal maintenance in the amount of $10,500 per month.

[7] Pursuant to father's motion for reconsideration of the front-loading of spousal maintenance and the tax implications, the court modified the schedule of spousal support. The result was a schedule that provided mother with almost exactly the same amount of support [$415,200] over the same five-year period, with multiple step-downs.

[8] Mother's separate property consisted primarily of a premarital individual retirement account ("IRA"), five bank accounts, and approximately $350,000 in jewelry gifted to her by father. Mother's accounts, including the IRA, at the time of service of the petition for dissolution, cumulatively totaled less than $75,000.

[9] Father testified to holding at least twenty-one companies' stock in his portfolio. Of those, besides Disney, he was also gifted or inherited stock in Exxon, AT&T, Boeing, SW Gas, Raytheon, and General Motors, among others. Prior to his marriage to mother, father purchased, among others, Verizon, Pepsi Co., Citigroup, and Johnson & Johnson.

not an active investor—there were only 22 purchases of stock and 121 sales of stock to the large Schwab account, #2203—during the seven-year marriage.[10] It found the real estate, other than the marital home, to be father's sole and separate property purchased or gifted to him prior to the marriage. It awarded father nearly $50,000 in bank accounts as his sole and separate property. A BMO Harris bank account, #7275, valued at $4,522.84 and a US Bank account, #9323, were identified as community property.

¶9 The family court found father had $27,090.05 in community credit card debt and mother had $3,155.04 in community credit card debt. It found mother owed father an equalization payment of $11,967.51 toward the community debt, as well as reimbursement of $13,5000 which was advanced to mother for moving expenses. The family court also found, based upon a retroactive downgrade of spousal maintenance, that mother owed father $10,850, as well as an additional $20,000 borrowed from a home equity line of credit. The final equalization payment due to father was $57,615.30.

¶10 Mother requested attorneys' fees in the amount of $195,440 and costs in the amount of $42,273.60 pursuant to Arizona Revised Statutes ("A.R.S.") § 25-324 (2018). The family court awarded her $110,000 in fees and $30,000 in costs. It noted that mother initially took unreasonable positions as to child support, spousal maintenance, and legal decision making. The family court explicitly found that mother did not take unreasonable positions as to father's stock holdings.

¶11 A judgment was entered in December 2016. Mother timely appealed. Father filed a cross-appeal, but ultimately did not pursue it.

**ISSUES**

¶12 On appeal, mother asserts the family court:

1. Abused its discretion in determining community property, specifically the stock and financial accounts, and committed reversible error in allowing father to offer *Rueschenburg* evidence as to the increase in value of the stock;

---

[10] At that number, approximately ninety of those sales were of Disney stock when father needed additional cash. Koons testified that Lawless' report indicating 294 transfers "significantly" overstated the activity, due to errors and due to, on twenty-two occasions, blocks of stock such as Disney being sold on the same day but counted as multiple transactions.

2. Abused its discretion in dividing the community debt equally;

3. Abused its discretion in not requiring father to buy her out of the marital home;

4. Abused its discretion in awarding her $1,000 a month in child support; and

5. Abused its discretion in the manner it apportioned attorneys' fees.

## DISCUSSION

### Community Property Division

¶13 In a dissolution, the family court must "assign each spouse's sole and separate property to such spouse" and divide the community property and debt equitably. A.R.S. §§ 25–213, -318(A) (2018). We will uphold the family court's property division unless the record is "devoid of competent evidence to support the [court's] decision." *See Platt v. Platt*, 17 Ariz. App. 458, 459 (1972). We have reviewed the record and find no abuse of discretion by the family court. There was competent evidence in the record to support the family court's conclusion that the stock portfolio, the increase in value of the stock portfolio, certain enumerated financial accounts, the real property other than the marital home, and the 2008 tax refund were all father's sole and separate property.

¶14 Initially, we note that when mother speaks of community property in her appeal, she refers primarily to the stock holdings and certain financial accounts. The stock portfolio represents the lion's share of the total estate.[11] The family court determined that the stock holdings and financial accounts at issue, other than one small BMO Harris account and one US Bank account, were father's sole and separate property.

¶15 Mother argues, alternatively, that the entire increase in value of the stock over the course of the marriage is community property, and that the increase in value of stocks other than Disney [$7.4 million] or some

---

[11] The stock portfolio is primarily in the Schwab account #2203 (ending value of $44,438,966 as of November 30, 2016) and the Schwab account #8139 (ending value of $344,686 as of December 31, 2016).

portion thereof is community property.[12] Mother asserts father did not meet his burden of proof by clear and convincing evidence that the increase in stock value was not community property. She maintains that substantial justice requires that the $7.4 million dollars, or a portion thereof, be considered community property subject to division. She also asserts that bank accounts opened after the marriage should be considered community property.

¶16        "The profits of separate property are either community or separate in accordance with whether they are the result of the individual toil and application of a spouse or the inherent qualities of the [property] itself." *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979). The person seeking to have the holdings determined to be sole and separate property has the burden of proof by clear and convincing evidence. *Id.* Mother asserts, citing *Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 254 (App. 2008) (holding the trial court must equitably apportion the combined total of the profits and increase in value of the separate business if community efforts caused a portion of that increase and substantial justice required it), that the family court here erred in undertaking a debunked "all or nothing" determination as to the increase in the stock value. We disagree.

¶17        There was no need for an apportionment of the increase in value of the Disney stock, which comprised 88 percent of father's portfolio. The family court found, and there is evidence to support, that the increase in value of the Disney stock was completely due to the inherent qualities of the stock portfolio. *See Cockrill*, 124 Ariz. at 52. That conclusion was supported even by mother's own expert(s). Lawless testified that "99 percent" of the total increase in stock value was Disney-related.[13] There are, therefore, no Disney profits to apportion. *See Rueschenberg*, 219 Ariz. at 254.

¶18        As to the remainder of the stocks, mother maintains that father continually and actively managed his stock holdings and that the community should benefit from his toil. Specifically, she asserts that father

---

[12] There are two components to the increase in the value of the stocks. The first, Disney, increased $19.8 million dollars. The balance of the increase, $7.4 million dollars, relates to the other, approximately, 12 percent of father's portfolio which mother's expert opined was due to father's trading.

[13] Lawless testified that $ 26.4 million of the $37.3 million in increased value to the portfolio was due to a rise in Disney stock.

went into his "office" every day and monitored the stock market closely. Any additional profits she argues should be subject to apportionment. The evidence in the record supports the family court's determination that father, rather than being an active manager or "day trader," primarily received passive increases in value. Father testified that when he was in the office, he primarily paid bills and monitored the stock market. His stock strategy was "spend and hold"—to spend interest and dividends and to hold the principal. The amount of stocks purchased by father during the marriage was *de minimus* – $204,000. And the monies used to purchase those stocks flowed from his separate property. There was no evidence of commingling with community accounts. Koons testified, and the family court accepted, that the marital community had no impact on the increase in value of father's stock portfolio.

¶**19**      This court will not disturb the family court's rulings as to the admission or exclusion of evidence unless a clear abuse of discretion appears and prejudice results. *Selby v. Savard*, 134 Ariz. 222, 227 (1982); Arizona Rules of Evidence 103(a) (2018) (error in the admission of evidence is reversible only if a substantial right of the party is involved). We defer to the family court, as the finder of fact, on determinations of witness credibility and the weight to give to conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). The family court did not need Koons' testimony or report to come to the conclusion that the stock holdings were an overriding part of father's sole and separate property acquired before marriage. Father's testimony alone, along with the documentation in evidence, sufficiently fulfills his burden of proof on the matter. While the family court heard Koons' testimony that to the extent a *Rueschenberg* claim could even be available for a portfolio of publicly traded marketable securities, it would be "difficult to understand how the efforts of the marital community would affect the value of a portfolio of publicly traded securities." We need not decide that issue here. There is sufficient evidence in the record to support the family court's division of community property, and the family court is affirmed.

### Community Debt

¶**20**      The court has the authority and obligation to allocate community debt. A.R.S. § 25-318(B). Mother next argues the family court inequitably divided certain community debt. "'Equitable' ... is a concept of fairness dependent upon the facts of particular cases." *Toth v. Toth*, 190 Ariz. 218, 221 (1997). "In apportioning community property between the parties at dissolution, the superior court has broad discretion to achieve an equitable division [.]" *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App.

2007). Mother argues the distribution was inequitable because father got all the increase in asset value and only half the debt. Father asserts that mother asked the court to divide the debt 50:50. Father is correct. For that reason, the family court is affirmed.

**Disposition of the Home**

**¶21** The family court ordered the marital home listed for sale and net proceeds split between mother and father. Mother, briefly, on appeal argues the family court abused its discretion in allowing father to change his position on the disposition of the house and, because she has less resources, in failing to order father to pay out her share immediately. Specifically, mother asserts father previously indicated he would buy out her share for $796,054. While that may have been his earlier position, within his pretrial statement and at trial father indicated that the property should be sold and net profits divided as community property. Father testified the home was currently "underwater," and that if he paid out mother's interest in the home now, he would lose an additional $200,000. We do not find the family court abused its discretion in ordering the property be sold and, with sale of the property, the net profits divided.

**Child Support**

**¶22** Mother appeals from the award of child support. The family court awarded child support in an upward deviation to the amount of $1,000 a month, from the $538.29 indicated by the Child Support Guidelines and Worksheet. Mother and father have equal parenting time. Mother asserts $7,431 is the appropriate amount of support. She complains that to award otherwise puts father in the position of providing all the vacations and all the entertainment, leaving her in a position to only cover necessities.

**¶23** Generally, we review a child support award for an abuse of discretion. *Engel v. Landman*, 221 Ariz. 504, 510 (App. 2009). We will accept the family court's findings of fact unless they are clearly erroneous, but will draw our own legal conclusions from facts found or implied in the judgment. *Id.* Viewing the evidence in the light most favorable to sustaining the family court's findings, we must determine whether the record reasonably supports the findings. *Gutierrez*, 193 Ariz. at 346. Finding the family court abused its discretion, we reverse the award of $1,000 a month and remand for further proceedings consistent with this decision.

**¶24** "In a proceeding for dissolution of marriage . . . the court may order either or both parents owing a duty of support to a child, born to or

adopted by the parents, to pay an amount reasonable and necessary for support of the child." A.R.S. § 25-320(A) (2018). In determining support, the court must consider

> all relevant factors, considered together and weighed in conjunction with each other, including:
>
> 1. The financial resources and needs of the child.
>
> 2. The financial resources and needs of the custodial parent.
>
> 3. The *standard of living the child would have enjoyed if the child lived in an intact home with both parents* to the extent it is economically feasible considering the resources of each parent and each parent's need to maintain a home and to provide support for the child when the child is with that parent.
>
> 4. The physical and emotional condition of the child, and the child's educational needs.
>
> 5. The financial resources and needs of the noncustodial parent.
>
> 6. The medical support plan for the child. The plan should include the child's medical support needs, the availability of medical insurance or services provided by the Arizona health care cost containment system and whether a cash medical support order is necessary.
>
> 7. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.
>
> 8. The duration of parenting time and related expenses. A.R.S. § 25-320(D) (emphasis added).

¶25 The Guidelines contemplate that some parents will have greater than average means.

> If the combined adjusted gross income of the parties is greater than $20,000 per month, the amount set forth for combined adjusted gross income of $20,000 shall be the presumptive Basic Child Support Obligation. The party seeking a sum greater than this presumptive amount shall bear the burden

of proof to establish that a higher amount is in the best interests of the children, taking into account such factors as the standard of living the children would have enjoyed if the parents and children were living together, the needs of the children in excess of the presumptive amount, consideration of any significant disparity in the respective percentages of gross income for each party and any other factors which, on a case by case basis, demonstrate that the increased amount is appropriate.

A.R.S. § 25-320 app. § 8 (2018).

Gross income includes: "income from any source, and may include, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains . . .." Guidelines § 5(A). Here the trial court did not appear to have taken into account father's accumulated interest or his substantial capital gains of $484,669 in 2015. Rather, it appears it focused solely on the amount of dividends. Taking capital gains and interest into account would put father's monthly income in excess of $100,000 a month.

¶26　　　　One of the purposes of the Guidelines is: "[t]o establish a standard of support for children consistent with the reasonable needs of children and the ability of parents to pay." Guidelines § 1(A)(1). A premise of the Guidelines is that "The child support obligation has priority over all other financial obligations." Guidelines § 2(B). Father's income is routinely over $1 million dollars annually.[14] There is no concern that father will be unable to cover his own necessities. *See* A.R.S. § 25-320(A)(2).

¶27　　　　Here it was undisputed that the family unit spent over $50,000 a month to maintain their lifestyle.[15] They had an "exceptionally high standard of living." This family unit travelled extensively; for example, they customarily took a Christmas Disney cruise costing $18,000. They typically spent $200-300 each week on the minor child during trips to Dave & Busters, an arcade. Because this is not a family who was living beyond

---

[14] The family court presumed, pursuant to A.R.S. § 25-320(N), that mother could work, but made no such finding for father.

[15] The family court used $52,100 from the Child Support Worksheet, although father admitted during trial that his income routinely exceeded $1 million dollars annually.

its means, those expenditures are relevant under A.R.S. § 25-320(A)(3) to determine the standard of living the child would have enjoyed in an intact home.

¶28     The Arizona case most closely on point factually to this matter is *Nash v. Nash*, 232 Ariz. 473 (App. 2013).  In that matter, father, a former professional basketball player, divorced his wife of five-years; the two had three children in common.  *Id*. at 475, ¶ 2.  Mother sought child support in the amount of $22,500 a month.  *Id.* at 478, ¶ 17. Although this court did not ultimately determine if mother's request was reasonable under the facts, we did find that an upward deviation was appropriate and that such deviation should take into account the lifestyle the child is accustomed to.  *See id.* at 479-81, ¶¶ 20, 22-28; *see also* A.R.S. § 25-320(A)(3).

¶29     We said, citing to similar cases in other jurisdictions, that

> As other state courts have concluded, in such a situation, the court must look beyond the "basic necessities of survival" because children are entitled to share reasonably in their parents' economic good fortune. *See Miller v. Schou*, 616 So.2d 436, 438–39 (Fla.1993) [stating children of multimillionaires, however, need not ride to school in a Rolls Royce]; *accord Hansel v. Hansel*, 802 So.2d 875, 882–83 (La.App.2001) [where father's income exceeded $1 million dollars, the court upheld child support in the amount of $11,800/monthly] (correct standard is pre-divorce standard, not "basic needs"); *Isaacson v. Isaacson*, [] 792 A.2d 525, 537, 539 (N.J.Super.A.D.2002) [father's earnings exceeded $500,000 a year resulting in an award of $1750 per child] (beyond bare necessities, a wealthy parent must "share with the children the benefit of his financial achievement," including reasonable but "non-essential items" such as "tutoring, summer camps, sports clinics, music or art lessons, vacations [and] study abroad") (quotation omitted); *Montgomery v. Montgomery*, 481 N.W.2d 234, 236 (N.D.1992) [child support in the amount of $3500/monthly affirmed where father makes in excess of $14,000/month] ("needs of a child in a family with substantial income are more expansive because of the standard of living the family has enjoyed") (quotation omitted); *Branch v. Jackson*, []629 A.2d 170, 171 (1993) [father, a major league baseball player, nets $75,000 monthly, $2000 in child support and $3000 to deposit in trust monthly for the child appropriate] ("reasonable needs of a child whose parent or

parents are wealthy may well include items which would be considered frivolous to parents who are less well off"); *Harris v. Harris*, 168 Vt. 13, 714 A.2d 626, 633 (1998) [rejected physician father's claim that spending 21 percent of his gross income on support for two children was inequitable] (needs of affluent children grow along with their parents' good fortune).

*Nash*, 232 Ariz. at 481, ¶ 26.

**¶30**　　　This court clarified that the child support need not match historical spending patterns, dollar-for-dollar. *See In re Patterson*, 920 P.2d 450, 455 (Kan. Ct. App. 1996) ("no child, no matter how wealthy the parents, needs to be provided more than three ponies").  While a child's share in the good fortune of his or her parents need not precisely match pre-dissolution lifestyle, it should be "consistent with an appropriate lifestyle." *Nash*, 232 Ariz. at 480, ¶ 27, citing *Miller v. Schou*, 616 So.2d 436, 439 (Fla. 1993); *see also Isaacson v. Isaacson*, 792 A.2d 525, 539 (N.J. Super. Ct. App. Div. 2002) (supporting parent has the "right to participate in the development of an appropriate value system for a child" by limiting expenses to those that are reasonable).  Indeed,

> [i]n determining child support, the superior court must consider the reasonable needs of the children in light of the parents' resources. In determining whether an upward deviation in child support is appropriate in a case such as this, the court must give considerable regard to the reasonable benefits, beyond their "basic needs," accorded to the children during the marriage. See Guidelines, Background ("The total child support amount approximates the amount that would have been spent on the children if the parents and children were living together.").

*Nash*, 232 Ariz. at 479, ¶ 23.  That includes

> Expenses associated with international travel and households such as those of these parties usually are not relevant to the child-support needs of children in less affluent households. But in deciding child support after the dissolution of marriages such as this one, involving significant wealth, the superior court must consider the expense of allowing children who have enjoyed such benefits to continue to receive them .
> . . .

*Id.* at 480, ¶ 25.

**¶31**         Father has a statutory duty to pay child support in an amount that is reasonable and necessary.  A.R.S. § 25-320. The family court here awarded child support in an amount that constituted less than 2 percent of the family's routine monthly expenditures.[16] Putting the annual $12,000 of child support in perspective, that amount is less than half of what father receives in interest alone annually.  Given that support of the minor child is of paramount importance, we hold that, in a family with significant wealth, an award of child support of less than 2 percent of the total typical monthly expenditures is an abuse of discretion.

**¶32**         Therefore, not only do we find that the family court erred in its calculation of father's income, we find that, given father's resources, the upward deviation the court suggested was an abuse of discretion.  We reverse the family court's award of child support and remand for further proceedings consistent with this decision.

### Attorneys' Fees Below

**¶33**         Below, mother requested $195,440 in attorneys' fees and $42,273.60 in costs pursuant to A.R.S. § 25-324.  The family court awarded her $110,000 in fees and $30,000 in costs.  It noted that mother initially took unreasonable positions as to child support, legal decision-making, and spousal maintenance.

**¶34**         We review a decision regarding the awarding of fees under an abuse of discretion standard.  *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (App. 1994).  However, because we have reversed the family court's award of child support for recalculation, the awarding of child support being one of the stated bases for the reduction, we remand this issue to the family court for further determination.

### Attorneys' Fees on Appeal

**¶35**         Mother requests fees pursuant to A.R.S. § 25-324.  Section 25-324 requires us to examine both the financial resources and the reasonableness of the positions of each party.  After doing so, we find that the parties should bear their own fees and costs on appeal.

---

[16] This amount excludes the minor child's private school tuition, pageant expenses, and other activities father agreed to pay.

## CONCLUSION

**¶36** For the above reasons, we affirm the family court's judgment as to the division of community and separate property and community debt. We reverse in part and remand as to the child support determination and award of attorneys' fees below for reconsideration, and/or proceedings if necessary, consistent with this opinion.

