JjDREW, J.
From the trial judgment reducing his child support to $2200 per month, effective September 1, 2001, Thomas Dolan Schult, M. D., appealed, alleging these errors:
• finding that his income for purposes of the calculation of child support exceeded the guidelines’ figure set forth in La. R.S. 9:315.19;
• setting prospective support at $2,200, which he feels was too high;
• fixing the effective date of the child support reduction at September 1, 2001, instead of the date of judicial demand, a difference of several months; and
• taxing of all court costs against Dr. Schult.
Mrs. Schult answered the appeal. On appeal Mrs. Schult argued that the reduced child support setting was conservative and did not represent an abuse of discretion; and her attorney’s fees award of $250 was grossly inadequate and should be amended and increased. For the following reasons, the trial court’s judgment is affirmed on all counts.
At the trial held August 16 and 20, 2001, the trial court considered Dr. Schult’s motion to reduce child support along with Mrs. Schult’s rule for contempt and attorney’s fees, based upon Dr. Schult’s failure to pay $9,377.39 in past due child support.
Following trial on these issues, the court gave oral reasons for judgment and concluded that child support should be reduced, effective September 1, 2001, to $2,200. The award was based upon the court’s finding that Dr. Schult’s income exceeded the maximum amount of child support as set forth in La. R.S. 9:315.9, as of the date of filing which was laprior to the August 15, 2001 amendment extending the chart to $20,000 income per month. The court noted the highest amount for two children under La. R.S. 9:315.9 to be $1645 and declared the appropriate child support setting for the children in this case to be $2200. The court further ordered that:
• Dr. Schult be responsible for all costs of private school tuition for the two minor children;
• both parties provide health insurance;
• the parties share equally in the cost of any uncovered medical expenses;
• Dr. Schult be found in contempt for his failure to pay past due child support in the amount of $9,377.39, which amount Dr. Schult immediately ten *467 dered at court in order to purge the court’s finding of contempt; and
• Mrs. Schult be awarded attorney’s fees in the amount of $250 for having to bring the rule for back child support and contempt.
FACTS
The parties were divorced by judgment rendered February 16, 1995. Since that time, numerous proceedings to collect past due child support had been initiated and several proceedings tried relative to this issue. These are litigious parties.
Dr. Schult filed this instant motion to reduce on November 2, 2000, predicated upon two of his children having reached the age of majority (leaving two others as minors), and Dr. Schult’s alleged involuntary reduction in income based upon his mental disability.
At the time of the initial setting of child support, Dr. Schult was a practicing anesthesiologist working at Willis-Knighton in Shreveport | seaming $680,000 per year. At the time of trial, the doctor was participating in a fellowship in pain management at LSU Medical Center, earning $40,597 per year.
Dr. Schult further testified that:
• he had some disagreements with the administrator of Willis-Knighton and that his contract was terminated.
• he left Shreveport in November of 1999 and moved to Dallas, Texas, where he sought to “start [his] life again.”
• Upon urging of family and friends, Dr. Schult began treatment with Dr. Michael J. Healy who diagnosed him with bipolar disease, or hypermania coupled with depression.[1]
• he began taking prescribed medication, but that his situation did not improve.
• Dr. Healy recommended that Dr. Schult seek treatment at COPAC, a dual facility for psychiatric problems and addiction.
• he entered what was to be a twelve week treatment program at the facility located in Mississippi, but did not perceive the treatment to be helpful to his particular condition and voluntarily left the facility after only six weeks to return to Dallas.
• he attempted to qualify for disability insurance benefits under his disability insurance policy but was denied.
• he needed to return to work and decided to seek out a position in pain management for which the earliest available fellowship was at LSU Medical Center in Shreveport.
• he returned to Louisiana to begin the fellowship in June of 2000.
DISCUSSION
The trial court made a specific finding that the income of Dr. Schult for purposes of the calculation of child support was “over the charts,” | ¿referring to the income chart provided by La. R.S. 9:315.19[2]. Even though this instant matter was heard on August 16 and 20, 2001, the appropriate child support guidelines chart relative to this matter was that in effect as of the date of filing, November 2, 2000, which reflected the prior guidelines in *468 which the highest income figure was $10,000 per month.
La. R.S. 9:315.10 provided as follows:
If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule ..., the court shall use its discretion in setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set forth in the schedule.
Our first determination is whether the court erred in its finding that Dr. Schult’s income exceeded $10,000 per month. At the time of trial, the doctor was earning $3,383 per month through his fellowship in pain management.
Concerning other resources, Dr. Schult admitted at trial that:
• he earned approximately $900,000 in 1999, mostly from his anesthesiology practice;
• the value of his Schwab investment account at the time of trial was $2,456,079.18;
• the value of his Fidelity account at trial time was $240,000;
• a checking account in Bank of America in Dallas, from which his living expenses were paid, contained a total of $70,000;
• he had another separate checking account with a current balance of $11,000 at time of trial, from which he paid only child support;
• during the time that he lived in Dallas, he lived off of his accumulated assets;
Is* at the time of the initial divorce, assets which exceeded two million dollars were divided between the parties;
• since that time, his assets had grown considerably; and
• he believed Mrs. Schult’s assets should have grown as well, had they been properly invested.
Dr. Schult argued that the court erred in considering his investment portfolio as income, rather than capital. He cited French v. Wolf, 181 La. 733, 160 So. 396 (1935) and Guy v. Guy, 600 So.2d 771 (La.App. 5th Cir.1992). Even accepting the doctor’s argument that these capital investments were inappropriately categorized below, the trial court’s determination that these assets produced income was certainly warranted. It is inconceivable that a court should be unable to consider assets which total nearly three million dollars in its determination of a party’s ability to provide for his children.[3]
Remarkably, in finding that Dr. Schult’s income exceeded $10,000 per month, the court did not make a specific finding that the doctor was underemployed. Appellee argues, however, that such a finding is implicit in the trial court’s ruling and should be considered by this court.
La. R.S. 9:315.9 stated as follows:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential unless the party is physically or mentally incapacitated ...
Voluntary underemployment is a question of good faith on the obligor spouse. The trial court has wide discretion in its determination of the credibility of the witness; whether the obligor spouse is in good faith in | ^ending or reducing his income is a factual determination which will not be disturbed absent an abuse of discretion. Gould v. Gould, 28,966, (La.App.2d Cir.1/24/97), 687 So.2d 685.
*469 Certainly, the trial court’s finding that Dr. Schult has the capacity to earn more money than he did in the pain management fellowship would be well-founded. Dr. Schult left his employment as an anesthesiologist because he was terminated after a disagreement with the administrator. Regardless of extensive testimony pertaining to his perceived disability, the fact is that Dr. Schult was denied disability benefits.
Throughout these proceedings, the record reflects the physician’s testimony as evasive and non-responsive. However, he did testify clearly as to his own belief that he was not disabled and should return to work. The trial court’s finding that Dr. Schult’s imputable income exceeded $10,000 per month was not clearly erroneous.
The next inquiry is whether the setting at $2200 per month is reasonable and supported by the evidence. La. R.S. 9:315.10(B), prior to its (inapplicable here) amendment, stated as follows:
If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in R.S. 9:315.14, the court shall use its discretion in setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set forth in the schedule.
In the interpretation of this statute, courts have taken various approaches in setting child support above the guidelines. Some courts have used extrapolation calculations. Colvin v. Colvin, No. 94-2143 (La. App. 1st Cir.10/6/95), 671 So.2d 444, writ denied 95-2653 (La.1/5/96), 667 So.2d 522; Aguilar v. Wilson, 613 So.2d 228 (La.App. 1st Cir.1992), unit denied 614 So.2d 66 (La.1993). Other jurisprudence has focused upon the needs of the child rather than on a strict extrapolation of the guideline figure. Serrate v. Serrate, No. 96-1545 (La.App. 1st Cir.12/20/96),684 So.2d 1128; Hector v. Raymond, No. 96-972 (La. App. 3rd Cir.4/2/97), 692 So.2d 1284, writ denied 97-1134 (La.6/13/97), 695 So.2d 978.
This court considered a case where the income exceeded $10,000 per month in State v. Baxter, No. 33-188, (La.App.2d. Cir.5/10/00), 759 So.2d 1079. The court held that the child support award should be judged on a case-by-case basis without a mathematical formula, such as one which simply extrapolates from the maximum amount listed. Factors to be considered in such an inquiry are:
• the circumstances of the parents;
• the child’s best interest;
• the parent’s ability to pay; and
• the lifestyle that the child otherwise would have enjoyed had the parents not separated in the first place.
The trial court correctly recognized the highest number on the chart for two children to be $1,645, to which the court added $555.00, totaling $2,200 per month. We find this amount to be appropriate under all the circumstances.
The trial court set the additional child support-related requirement that Dr. Schult provide for the cost of private school tuition and related fees for the two minor children. Relative to this issue, the trial court stated as 1 Rfollows:
... this is not a standard case I get to hear where there is not enough money to go around, in that both of you, if you just put your financial statement on this table, are wealthy people, period ...
Given the circumstances and situation of the parents in this case, this court finds that the setting of child support for the two remaining minor children in the amount of $2200 per month was reasonable and fully supported by the record.
*470 Regarding the trial court’s failure to make the award retroactive to the date of judicial demand as well as the court’s assessment of all costs to Dr. Schult, this court finds that the record amply supports these rulings.
La. R.S. 9:315.21(C) states:
Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
Dr. Schult’s actions reflected a blatant disregard for prior court-ordered child support awards. Stating that he simply did not believe that the order was fair, he admitted:
• failing to make timely and adequate payments on many occasions;
• failing to make court-ordered payments for tuition and registration fees for his minor children; and
• Not timely reimbursing Mrs. Schult for necessary medical and other expenses for the children.
To credit this man of healing for his recalcitrant attitude during the lengthy time period that this rule was pending would be inappropriate and unfair to Mrs. Schult, who was responsible for the timely payment of these |9expenses. She was forced to file contempt charges in order to obtain these rightful reimbursements. Further, it is noted that this rich doctor has made little or no effort to provide for his major daughters who are now attending college, the costs of which expenses have been borne by Mrs. Schult. Although the major children are not properly considered for purposes of this current child support award, the doctor’s response to the needs and welfare of his older children provides seasoning for this man’s rancid and pungent priorities. He evidently feels the ongoing cock fight with his ex-wife is more important than the well-being of their children. Certainly retroactive credit on the reduced current child support award is not warranted here in this sick situation. This bizarre behavior cannot be rewarded.
For the reasons previously stated, the court finds that the trial court did not err in its assessment of all costs to Dr. Schult who always managed to place his tactical strategies against his ex-wife well ahead of the needs of his children. His actions have inconvenienced, upset and dismayed his ex-wife and his children.
Finally, the court finds that the award of attorney fees in the amount of $250 while on the low end of acceptability, was appropriate under all of these circumstances. As previously stated, the trial court recognized Mrs. Schult as wealthy in her own right. Furthermore, as pointed out by the trial court, the majority of the hearing concentrated upon testimony and evidence on the doctor’s motion to reduce child support. Dr. Schult tendered the past due support immediately following the finding of contempt. Under these |inpeculiar circumstances, we cannot find that our brother judge below was clearly wrong in his setting of attorney’s fees for Mrs. Schult.
DECREE
The August 14, 2001, judgment setting child support in the amount of $2200 per month, effective September 1, 2001, and granting Mrs. Schult attorney’s fees of $250 is AFFIRMED. The assessment of all court costs including all costs of the appeal are assessed to Thomas Dolan Schult, M.D.

. The curriculum vitae in the record reflects that Dr. Healy is a radiologist with certification in addictionology and addiction medicine.

. This court notes that the chart was extended to $20,000 per month, effective August 15, 2001. Acts 2001, No. 1082, Sec 5 declares that the Act applies to actions concerning child support filed after August 15, 2001.

. A yield of 3% on three million dollars would generate $90,000 annually.