JONATHAN BERGMANN     *     NO. 2021-CA-0553

VERSUS     *

TRANG NGUYEN     *     COURT OF APPEAL

    *     FOURTH CIRCUIT

    STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-02437, DIVISION "H"
Honorable Monique E. Barial, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)


Gordon J. Kuehl
HOFFMAN NGUYEN & KUEHL, L.L.C.
541 Julia Street, Suite 200
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLANT

Theon Agnes Wilson
LAW OFFICES OF THEON A. WILSON
1100 Poydras Street, Suite 2900
New Orleans, LA 70163-2900


    COUNSEL FOR DEFENDANT/APPELLEE

      **AFFIRMED**
      **April 27, 2022**

DN

RMJ

SCJ

In this domestic dispute stemming from divorce proceedings, Appellant, Jonathan Bergmann (hereinafter "Mr. Bergmann"), appeals the trial court's December 29, 2020 judgment, which awarded Appellee, Trang Nguyen (hereinafter "Ms. Nguyen"), exclusive use and occupancy of the family home and designated Ms. Nguyen as the domiciliary parent of the parties' two minor children.[1]  For the following reasons, we find no abuse of the trial court's discretion and affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Bergmann and Ms. Nguyen were married on April 24, 2009.  They are the parents of two minor children, a son and a daughter.  In 2006, prior to the marriage, Ms. Nguyen purchased a house on Joseph Street in New Orleans, which eventually became the family home.  Ms. Nguyen purportedly donated one-half of her interest in the family home to Mr. Bergmann in March 2013.[2]

---

[1] At the outset, we note that the trial court judge, the Honorable Monique E. Barial, has presided over all of the domestic proceedings described herein between Mr. Bergmann and Ms. Nguyen.

[2] This Opinion uses the word "purportedly" because, as of this Opinion date, the validity of Ms. Nguyen's donation to Mr. Bergmann is the subject of pending litigation between the parties.

***MR. BERGMANN'S PETITION AND SUPPLEMENTAL PETITION FOR PROTECTION FROM ABUSE***

The parties have been engaged in litigation for several years. The precursor to the present dispute commenced on March 4, 2019, when Mr. Bergmann filed a "Petition for Protection from Abuse" (hereinafter "Petition for Protection") against Ms. Nguyen. Therein, Mr. Bergmann alleged that Ms. Nguyen punched, hit, and threatened him with bodily harm on March 2, 2019. Subsequently, on March 14, 2019, Mr. Bergmann filed a supplemental and amending "Petition for Protection from Abuse" (hereinafter "Supplemental Petition for Protection"), wherein he alleged additional acts of abuse that predated those described in the Petition for Protection. During the pendency of Mr. Bergmann's Petition and Supplemental Petition for Protection, he obtained a temporary restraining order against Ms. Nguyen and was granted temporary sole custody of the children and temporary use of the family home.

***MS. NGUYEN'S MARCH 12, 2019 PETITION FOR DIVORCE***

Prior to Mr. Bergmann filing his Supplemental Petition for Protection, Ms. Nguyen filed a "Petition for Divorce Pursuant to Louisiana Civil Code Article 102" on March 12, 2019, wherein she requested joint custody of the minor children, designation as the domiciliary parent, and use and occupancy of the family home.

***MARCH 25, 2019 HEARING AND JUDGMENT ON MR. BERGMANN'S PETITION AND SUPPLEMENTAL PETITION FOR PROTECTION***

On March 25, 2019, the trial court held a contradictory hearing on Mr. Bergmann's Petition and Supplemental Petition for Protection. After hearing testimony from Mr. Bergmann and Ms. Nguyen, the trial court stated that "Mr. Bergmann [] contradicted [his] own testimony about issues," which "made [Ms.

Nguyen's] testimony more creditable [sic] than [his]." That same day, the trial court signed a "Judgment of Dismissal," which dismissed with prejudice Mr. Bergmann's Petition and Supplemental Petition for Protection due to "[his] failure to prove by the appropriate standard the allegations contained in the Petition [f]or Protection . . . ."

### MS. NGUYEN'S MARCH 28, 2019 PETITION FOR PROTECTION FROM ABUSE, IN-RECONVENTION

After the hearing on Mr. Bergmann's Petition and Supplemental Petition for Protection, Ms. Nguyen filed a "Petition for Protection from Abuse, In-Reconvention" on March 28, 2019 (hereinafter "Petition In-Reconvention"). In the Petition In-Reconvention, Ms. Nguyen alleged, in part, that Mr. Bergman poured beer over her head and spat on her on December 30, 2018.

### MS. NGUYEN'S APRIL 1, 2019 PETITION TO REVOKE DONATION

On April 1, 2019, Ms. Nguyen filed a "Petition to Revoke Gratuitous Donation *Inter Vivos*" (hereinafter "Petition to Revoke") to revoke her purported donation to Mr. Bergmann of one-half of her interest in the Joseph Street house. In the Petition to Revoke, Ms. Nguyen contended that "[Mr. Bergmann] duped her into executing" the alleged act of donation. She asserted that, "[n]otwithstanding" her concerns regarding the authenticity of the alleged act of donation, "because under Louisiana law, an authentic act is presumed to be valid, Ms. Nguyen hereby files the instant Petition to Revoke same, based on Defendant's ingratitude . . . ."

### MR. BERGMANN'S APRIL 9, 2019 RULE FOR SUPPORT, CUSTODY, AND USE AND OCCUPANCY OF THE FAMILY HOME

On April 9, 2019, Mr. Bergmann filed a "Rule for Interim Spousal Support and In Due Course Final Periodic Spousal Support, Custody, Child Support, Use and Occupancy [of the Family Home]." In pertinent part, he requested use and

occupancy of the family home pending the partition of the community and/or co-owned property; an award of joint custody of the minor children; and designation of himself as the domiciliary parent.

***FIRST CONSENT JUDGMENT***

The following day, April 10, 2019, the trial court held a hearing, at which the parties entered a consent judgment on the record (hereinafter "First Consent Judgment"). Ms. Nguyen agreed to dismiss her Petition In-Reconvention without prejudice and in favor of injunctions prohibiting each party from going to the other party's residence.[3] Additionally, in the First Consent Judgment the parties agreed on an interim basis that Ms. Nguyen would have use and occupancy of the family home; that Mr. Bergmann and Ms. Nguyen would have joint custody of the children; and that all decisions regarding the children, with the exception of emergency circumstances, would be made by mutual agreement in writing. The parties made no domiciliary parent designation in the First Consent Judgment. On June 27, 2019, the trial court signed a judgment that memorialized the April 10, 2019 hearing and First Consent Judgment.

***MR. BERGMANN'S MAY 28, 2019 RULE FOR CONTEMPT***

On May 28, 2019, Mr. Bergmann filed a "Rule for Contempt." In the Rule for Contempt, Mr. Bergmann asserted that Ms. Nguyen violated the trial court's March 21, 2019 order, which ordered the parties not to dispose of, alienate, or encumber any of the community property. In particular, Mr. Bergmann contended

---

[3] In accordance with the First Consent Judgment, the trial court signed an April 10, 2019 "Judgment of Dismissal, In-Reconvention," which dismissed Ms. Nguyen's Petition In-Reconvention without prejudice "by consent of the parties as placed on the record in open court."

that Ms. Nguyen violated that order when she donated one-half of her interest in the family home to a third-party friend on March 29, 2019.[4]

Additionally, Mr. Bergmann alleged in the Rule for Contempt that Ms. Nguyen was voluntarily underemployed and/or unemployed. He requested that the trial court grant him use and occupancy of the family home; find Ms. Nguyen in contempt of court; and find Ms. Nguyen voluntarily underemployed and/or unemployed.

## *SECOND CONSENT JUDGMENT*

On September 8, 2020, the parties appeared before the trial court for a hearing and read another consent judgment into the record (hereinafter "Second Consent Judgment"). In the Second Consent Judgment, the parties agreed to a permanent joint and shared custody arrangement "whereby Mr. Bergmann has the children on Monday and Tuesday[;] Ms. Nguyen has the children on Wednesday and Thursday[;] and then Friday, Saturday, [and] Sunday alternates week to week" between Mr. Bergmann and Ms. Nguyen. On September 16, 2020, the trial court signed a judgment that memorialized the September 8, 2020 Second Consent Judgment. The determination of domiciliary parent designation and permanent use and occupancy of the family home was deferred until the next hearing scheduled for November 17, 2020.

## *NOVEMBER 17, 2020 HEARING*

On November 17, 2020, the trial court conducted a hearing on the limited issues of domiciliary parent designation and use and occupancy of the family home. Ms. Nguyen and Mr. Bergmann were the only witnesses.

---

[4] The third party donee is identified in the record as Alisa Joan Hock Swain.

**A.** *Testimony of Ms. Nguyen*

Ms. Nguyen testified that she is a registered nurse and formerly worked as a home health care nurse. She explained that she was not currently working due to the COVID-19 pandemic ("the pandemic"). Ms. Nguyen testified that she stopped working because she was afraid of exposing the children and herself to the virus, further noting that she has suffered from asthma her whole life. Additionally, Ms. Nguyen testified that a reason she discontinued working was because the children had been doing remote learning and schooling at home during the pandemic. She also testified that she experienced difficulty adjusting and balancing her work schedule with her custodial days with the children. Ms. Nguyen explained that prior to the pandemic, she had been able to make adjustments to her work schedule because her mother or babysitters were available to assist in caring for the children.

Regarding her employment status, Ms. Nguyen testified that another time period during which she did not work was "November 2019 for a short period of time due to stress . . . for two months." She testified that the only other time she did not work was a period of time around 2012 or 2013 when their daughter was born, during which time she stayed home "taking care of the [children]." She testified that, during that time period, she did "[b]asically everything" for the children and "was home with the kids all the time" because "[Mr. Bergmann] worked and traveled a lot." Ms. Nguyen further testified that when the children became school-age, she and Mr. Bergmann agreed upon the school that the children attended. Ms. Nguyen testified that bringing the children to school was "mostly [her]" responsibility but that Mr. Bergmann "generally" was the one to pick the children up from school unless she got off of work early.

6

When asked whether she and Mr. Bergmann have "encountered any difficulties in terms of reaching decisions" since their separation and after they began the physical custody rotation of the children, Ms. Nguyen answered affirmatively. In particular, she cited conflicts between them pertaining to therapy for the children; and she described an incident that occurred at Dr. Scuddy Fontenelle's office, noting that Dr. Fontenelle is a therapist they agreed to treat their daughter for issues that resulted, in part, from school-related bullying.[5] Ms. Nguyen testified that after she, the children, and Mr. Bergmann arrived for therapy, Mr. Bergmann refused to talk to Dr. Fontenelle and did not permit Dr. Fontenelle to treat their son. Ms. Nguyen described Mr. Bergmann as "pretty irate" and explained that "he said[] [he] did not agree to have [their son] seen, only [their daughter]." She testified that Dr. Fontenelle subsequently sent to the trial court a letter in which he outlined the encounter and expressed a refusal to treat either of the children. Ms. Nguyen testified that she brought their son to Dr. Fontenelle's office because she had a "vague" recollection that both children required therapy as a result of the divorce. She testified that she eventually took the children to counseling sessions at the Children's Bureau.

With respect to their "trouble reaching agreements" as it relates to their children, Ms. Nguyen testified that this was, in part, because Mr. Bergmann sent her text messages that made her feel "harassed" and "bullied" due to the tone and number of the messages. Specifically, she testified that it seemed as though Mr. Bergmann was "always accusing [her] of something." As an example, Ms. Nguyen

---

[5] During her testimony, Ms. Nguyen stated that "[Our daughter] was having issues, psychological issues. And she [] went to the emergency room when I was taken out of the house . . . . [W]hen I did get her back . . . she refused to go to school. . . .So I think she was having some sort of separation issue . . . ."

recalled an incident when their son felt well when he left her care to stay with Mr. Bergmann but then Mr. Bergmann text messaged Ms. Nguyen for an explanation as to why their son was experiencing stomach problems. Ms. Nguyen also testified that Mr. Bergmann questioned her via text messages as to why she and the children stayed at a friend's residence that had electricity during an electrical outage at the family home. Ms. Nguyen testified that she did not believe it was necessary to communicate with Mr. Bergmann "about every little thing" and described Mr. Bergmann as "controlling."

Additionally, Ms. Nguyen stated that she felt fearful of Mr. Bergmann because he wrongfully had her evicted from their family home based on the allegations he made in the Petition and Supplemental Petition for Protection. She also testified that Mr. Bergmann had twice called the police to falsely accuse her of fraudulent check cashing.

However, Ms. Nguyen testified that although communication and decision-making with Mr. Bergmann were difficult, she tried to communicate with him about the important issues. She cited as an example a series of messages from her to Mr. Bergmann from August 2016 to February 2019 regarding the children and their schooling. Ms. Nguyen testified that Mr. Bergmann did not always promptly communicate with her, noting that he did not immediately tell her of their daughter's admission to the emergency room for anxiety.

When asked why the trial court should designate her as the domiciliary parent, Ms. Nguyen responded:

> Because I think that I worry about them. I take care of every little thing. I try to work, save up for them for their future. You know, pay for the mortgage. H[elp] them to have social gatherings. Friends [are] very important[,] especially for [our daughter]. I do things with them; play games, draw, take them to see family members.

8

> You know, I want to make the decision to transfer [the children] to a different school because of the bullying that happened at [their current school].

When specifically asked why she was in the better position than Mr. Bergmann to make educational and health decisions, Ms. Nguyen responded:

> Because I know my children. [I am] a nurse. I know what needs to be done, what is serious. I make sure I take care of their teeth, and wipe it [sic] down, I floss it [sic]. I try to minimize them going to the doctor as much as I can, if I can take care of them. And if I know [there is] something serious going on, then I will definitely take my kids to the doctor.
>
> But yeah, I mean financially, you know if I can care for them at home and monitor them like I always do. If I see a rash or something that I know [is] not serious, I can manage that at home. And if it gets worse, I would definitely call the doctor for advice.

As to use and occupancy of the family home, Ms. Nguyen testified that she and the children have resided in the family home since the First Consent Judgment in April 2019. She testified that it was important for the children to remain in the home because "[t]hey grew up there" and were presently doing distance learning and schooling from the family home during the pandemic. Ms. Nguyen testified that she and the children had no other place to live; that she owned no other property; that she could not move in with family members during the pandemic; and that she was not in a financial position to pay rent. She reiterated that she was not working and that she was receiving unemployment benefits. Ms. Nguyen testified that she had applied for and received forbearance on the mortgage and that it was her intent to continue to apply for forbearance until the conclusion of the pandemic and her return to employment. She contended that she and the children would be homeless during her custodial time in the event the court granted Mr. Bergmann use and occupancy of the family home.

9

B.     *Testimony of Mr. Bergmann*

Mr. Bergmann, who testified that he owns his own real estate company, explained that he had been a "stay-at-home" father for the three years prior to the couple's separation,[6] and he described himself as the children's primary caregiver. However, Mr. Bergmann acknowledged during his testimony that he and Ms. Nguyen shared the responsibility for taking the children to and from school. He testified that although Ms. Nguyen was involved in the children's schooling, he was more engaged in the school's community activities than she. Regarding their school work, Mr. Bergmann testified that he studied more with the children and that the children turned to him for help with their homework.

In terms of responsibility for the children's medical care, Mr. Bergmann testified that he scheduled the children's doctor's appointments; took the children to their doctor's appointments; and obtained healthcare coverage for the children through the Affordable Health Care Act. He testified that Ms. Nguyen's communication with him about the children's medical issues was "erratic." Discussing the incident at Dr. Fontenelle's office, Mr. Bergmann testified that Ms. Nguyen did not tell him that Dr. Fontenelle was supposed to treat their son; and Mr. Bergmann stated that he consented only to have their daughter treated. Mr. Bergmann also testified that although he was the one who signed their daughter up for therapy at the Children's Bureau, Ms. Nguyen did not tell him when the sessions actually started, though he attended the sessions after he learned that they had commenced. During his testimony, Mr. Bergmann conceded that Ms. Nguyen had more knowledge than he when it came to the children's illnesses by virtue of

_____
[6] The parties separated on March 6, 2019.

10

her status as a nurse and that her medical knowledge might cause her to perceive a medical complaint from the children as less of an issue than he.

Regarding the pandemic, Mr. Bergmann testified that he did not think Ms. Nguyen and he shared the same the same safety concerns. He cited his concerns about the inability to social distance at the residence where Ms. Nguyen and the children stayed after the electrical outage at the family home and about Ms. Nguyen allowing the children to play outside in the park.

Discussing the parties' roles, Mr. Bergmann testified that there were some periods within the marriage where Ms. Nguyen was a "stay-at-home" mother and he was the primary breadwinner. In this regard, he stated that "[there has] been some back and forth." Regarding their present communication, Mr. Bergmann testified about a recent set of text messages between himself and Ms. Nguyen, in which they discussed sitters; the children's school work; medical issues; and drop-off arrangements for the children. He contended that these messages demonstrated cooperation between them, with Ms. Nguyen providing information to him and vice versa. Mr. Bergmann testified that he did not view any of the text messages he sent to Ms. Nguyen as harassment.

When asked why he should be named the domiciliary parent over Ms. Nguyen, Mr. Bergmann responded as follows:

> I think part of raising children is you, you have these different roles that you have; in school and activities and eventually going to college, and I do that already. And [I am] trying to get them raised, prepare them, and have a lot of fun.

> I just want to get to a place where we can both stop this [expletive] and just think about them.

He testified that he would communicate with Ms. Nguyen about school and medical issues.

While discussing the family home, Mr. Bergmann testified that the primary reason that he sought use and occupancy was his belief that he could earn income from the property to pay a reasonable portion of the mortgage. He acknowledged that Ms. Nguyen told him in a written note that she had applied for loan modification. However, Mr. Bergmann testified that he should have exclusive use and occupancy of the family home rather than Ms. Nguyen because he would get it on a better footing with the mortgage company and had "poured his heart into the property."

Testifying about his employment status, Mr. Bergmann stated that he was presently working but had not earned much money in 2020. He testified that his last sale was in December 2019 and that he had been receiving unemployment benefits the prior year through the date of the hearing. Although Mr. Bergmann testified that his real estate license was active and he recently added two agents, he explained that "there has not been much going on."

Regarding his present housing situation, Mr. Bergmann testified that he lived in an apartment belonging to a former employer, who allowed him to pay rent periodically. In terms of other housing options, Mr. Bergmann testified that he does not have family in Louisiana with whom he could stay; that he has no other friends with whom he could stay; and that he did not believe he could afford the market price of rent.

## DECEMBER 29, 2020 JUDGMENT

At the conclusion of the hearing, the trial court took the matter under advisement. On December 29, 2020, the trial court rendered judgment granting Ms. Nguyen exclusive use and occupancy of the family home and designating Ms.

Nguyen as the domiciliary parent. The judgment and its incorporated reasons for judgment provided:

Since the initial filings in this matter, the parties have each resided in the former family home with the children. They have also attempted to reside on the same property with Ms. Nguyen and the children living in the family home and Mr. Bergmann living in the short term rental unit. Ms. Nguyen owned the home as her separate property and eventually donated a portion to Mr. Bergmann. She is currently residing in the home with the minor children. The only persons who have consistently resided in the home are the children.

Both parties have testified that they have no other residence and would not be able to afford other accommodations. Neither Ms. Nguyen nor Mr. Bergmann were receiving income sufficient to satisfy the monthly notes on the home. Therefore, Ms. Nguyen arranged to have the mortgage payments placed in forbearance. Their financial situations have been in part impacted by the pandemic.

Mr. Bergmann and Ms. Nguyen have each been active in the daily lives of their children. While they each demonstrate care and concern for the children, their approaches to parenting vary. The parties have demonstrated an inability to work directly with each other on any issue over the last few years. Ms. Nguyen's recent decisions about the children's participation in therapy appears to have been based [] solely on what she believed to be in the best interest of the children. Mr. Bergmann's objection to their son's participation in therapy appeared to be made in his interest as opposed to the interest of the child.

Considering the law, the evidence, and the testimony, the Court renders judgment as follows:

**IT IS ORDERED, ADJUDGED, AND DECREED** that Trang Nguyen is granted exclusive use an[d] occupancy of the former family home.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Jonathan Bergmann is granted rental reimbursement for Trang Nguyen's exclusive use and occupancy of the family home. The rental value shall be established during the partition of the community.

**IT IS FURTHER ORDERD, ADJUDED, AND DECREED** that Trang Nguyen is designated as the domiciliary parent of the minor children of the parties.

Thereafter, the trial court denied a motion for new trial filed by Mr. Bergmann. Mr. Bergmann timely appealed the trial court's December 29, 2020 judgment.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Bergmann raises the following two assignments of error: (1) the trial court abused its discretion and committed reversible error by granting Ms. Nguyen exclusive use and occupancy of the family home; and (2) the trial court abused its discretion and committed reversible error by designating Ms. Nguyen as the primary domiciliary parent.

## STANDARD OF REVIEW

The award of use and occupancy of the family home and designation of the domiciliary parent are part of child custodial determinations. Both are reviewed under the abuse of discretion standard and will not be disturbed on appeal in the absence of a clear showing of abuse. *See State through Dep't of Children & Family Servs. Child Support Enf't v. Knapp*, 2016-0979, p. 12 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 139 (citing *Leard v. Schenker*, 2006-1116, pp. 3-4 (La. 6/16/06), 931 So.2d 355, 357). In *Knapp*, this Court discussed the following precepts in applying this standard of review:

> In most child custody cases, the trial court's rulings are based heavily on its factual findings. *Hanks v. Hanks*, [20]13-1442, p. 8 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 214 (citing *Palazzolo v. Mire*, [20]08-0075, pp. 34-37 (La. App. 4 Cir. 1/7/09), 10 So.3d 748, 768-70). "[A] court of appeal may not set aside a trial court's or a jury's findings of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Evans v. Lungrin*, [19]97-0541, [19]97-0577, p. 6 (La. 2/6/98), 708 So.2d 731, 735 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).

> "Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child." *Mulkey v.*

14

*Mulkey*, [20]12-2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367; *see* La. C.C. art. 131 (providing that "the court shall award custody of a child in accordance with the best interest of the child"). In determining the best interest of the child, "[e]ach case must be viewed in light of the child's age, the situation of the parents, and any other factor relevant to the particular case." *Palazzolo*, [20]08-0075[,] p. 35, 10 So.3d at 768.

Because the trial judge is in a better position to evaluate the best interest of a child from [a] superior position to observe and evaluate the demeanor and credibility of the parties and the witnesses, [the trial judge's] decision will not be disturbed on review absent a clear showing of abuse. *Smith v. Smith*, [20]07-0260, [20]07-0261, p. 4 (La. App. 4 Cir. 2/13/08), 977 So.2d 1114, 1116-17; *Palazzolo*, [20]08-0075[,] p. 35, 10 So.3d at 768; *Foshee v. Foshee*, [20]12-1358, p. 4 (La. App. 4 Cir. 8/28/13), 123 So.3d 817, 820; *Watts v. Watts*, [20]08-0834, p. 2 (La. App. 4 Cir. 4/8/09), 10 So.3d 855, 857. As this court recently noted in *Jaligam v. Pochampally*, [20]16-0249, p. 6 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, 303, "the court of appeal cannot simply substitute its own findings for that of the trial court." *See also*, *Mulkey*, [20]12-2709, p. 16, 118 So.3d at 368.

2016-0979, pp. 12-13, 216 So.3d at 139-40. We apply these precepts to Mr. Bergmann's assignments of error.

### *ASSIGNMENT OF ERROR NUMBER (1): USE AND OCCUPANCY OF THE FAMILY HOME*

In his first assignment of error, Mr. Bergmann asserts that the trial court erred in awarding use and occupancy of the family home to Ms. Nguyen. He contends that the trial court's ruling was erroneous based on the evidence presented. In support of his argument that the trial court erred in awarding Ms. Nguyen use and occupancy of the family home, Mr. Bergmann argues the following:

(1) There was no agreement to share use of the home before the separation;

(2) Ms. Nguyen donated the community property interest to a third party, which is not in the family's best interest;

(3) The trial court improperly disallowed testimony about the third party donation;

15

(4)     The trial court failed to address Ms. Nguyen's false testimony about her ownership of the family home;[7]

(5)     The trial court misunderstood Mr. Bergmann's interest in the community property, i.e., the family home;[8]

(6)     The trial court did not consider that Ms. Nguyen was purposefully unemployed;

(7)     The trial court misunderstood Mr. Bergmann's work history;[9]

(8)     The evidence did not support a finding that Ms. Nguyen had no other place to stay; and

(9)     Ms. Nguyen failed to communicate with Mr. Bergmann about the mortgage.[10]

We consider each of these arguments.

---

[7] The "false" testimony identified by Mr. Bergmann is his claim that Ms. Nguyen testified that she was the sole owner of the family home during the March 25, 2019 hearing on Mr. Bergmann's Petition for Protection, whereas Ms. Nguyen's testimony at the November 17, 2020 hearing purportedly established that the family home was community property based on her donation of an interest in the family home to Mr. Bergmann.

[8] Mr. Bergmann's fifth argument contends that the trial court "misunderstood" that Ms. Nguyen's donation of an interest in the family home to a third party was not merely a donation of Ms. Nguyen's interest in the property, but rather was a donation of Mr. Bergmann's community property interest in the family home.

[9] Mr. Bergmann's seventh argument maintains that although he was a "stay-at-home" father during the three years preceding the couple's separation, he continued to work in real estate and to operate the short-term rental unit behind the family home. He also claims that if he were granted use and occupancy of the family home, he would generate enough income to help pay the mortgage.

[10] Mr. Bergmann complains in his ninth argument that Ms. Nguyen did not specifically communicate with him about securing the mortgage forbearance on the family home; however, Mr. Bergmann acknowledged during his testimony at the November 17, 2020 hearing that he was aware that mortgage payments on the property were in arrears and that Ms. Nguyen had taken steps for a loan modification.

*La. R.S. 9:374 Criteria for Consideration*

The relevant criteria to consider in an award for use and occupancy of the family home are outlined in La. R.S. 9:374, in pertinent part, as follows:

> A. When the family residence is the separate property of either spouse, after the filing of a petition for divorce or in conjunction therewith, the spouse who has physical custody or has been awarded temporary custody of the minor children of the marriage may petition for, and a court may award to that spouse, after a contradictory hearing, the use and occupancy of the family residence pending the partition of the community property or one hundred eighty days after termination of the marriage, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, and shall award the use and occupancy of the family residence to the spouse in accordance with the best interest of the family. The court shall consider the granting of the occupancy of the family residence in awarding spousal support.
>
> B. When the family residence is community property or is owned by the spouses in indivision, or the spouses own community movables or immovables, after or in conjunction with the filing of a petition for divorce or for separation of property in accordance with Civil Code Article 2374, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or immovables pending partition of the property or further order of the court, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community movables or immovables in awarding spousal support.

The purpose of La. R.S. 9:374 is to provide for the "occupancy of the family residence pending the partition of the community property . . . by a reasoned judicial determination rather than the whims of circumstance." *See Burrell v. Burrell*, 437 So.2d 354, 355 (La. App. 4 Cir. 1983) (quoting *Khaled v. Khaled*, 424 So.2d 370, 374 (La. App. 2 Cir. 1982)).

**A.** *Mr. Bergmann's Argument #1: Agreement to Share the Home*

Mr. Bergmann's first argument maintains that the trial court erroneously noted in the December 29, 2020 judgment that the parties "have also attempted to reside on the same property with Ms. Nguyen and the children living in the family home and Mr. Bergman living in the short-term rental unit." Mr. Bergmann insists the parties never reached such an agreement to share use of the family home. Further, Mr. Bergmann argues that no evidence or testimony regarding him living in the rental unit while Ms. Nguyen and the children lived in the family home was ever provided at the November 17, 2020 hearing. Notwithstanding whether the trial court's factual assertion was correct or incorrect, Defendant does not show how the trial court's alleged incorrect assertion impacted the trial court's award of use and occupancy. Therefore, any error on the trial court's part regarding the parties' shared occupancy of the property amounted to harmless error.

**B.** *Mr. Bergmann's Arguments #2-5, #7, and #9: The Family Home as Separate or Community Property*

Mr. Bergmann's second, third, fourth, fifth, seventh and ninth arguments stem, in large part, from the parties' on-going dispute as to whether the family home is Ms. Nguyen's separate property or if it is community property. The record before this Court reveals that the family home's classification as community or separate property was unresolved at the time of the November 17, 2020 hearing, at which time litigation was still pending in Ms. Nguyen's separate action to revoke Mr. Bergmann's one-half interest in the family home. Similarly, with reference in particular to Mr. Bergmann's contentions outlined in his seventh and ninth arguments, a lack of objective evidence existed at the time of the November 17, 2020 hearing to evaluate whether Mr. Bergmann's plans to operate a short-term

rental on the property or Ms. Nguyen securing the mortgage forbearance during the pandemic was in the long-term better interest of the family. In the short-term, however, this Court judicially notes that Ms. Nguyen's decision and efforts to obtain the mortgage forbearance preserved the children's use and occupancy of the family home at the time of the November 17, 2020 hearing.

Because the unresolved classification of the family home as community or separate property was pending in a separate action, issues deriving from that classification were not before the trial court in determining either the use and occupancy award or designation of the domiciliary parent. As such, Mr. Bergmann's assertions enumerated in his second, third, fourth, fifth, seventh and ninth arguments are without merit and were not probative of the La. R.S. 9:374(A) and (B) inquiries that the trial court made in determining the best interest of the family in its use and occupancy award, i.e., the parties' economic status and the needs of the children.

Moreover, we note that regardless whether the family home is separate or community property, La. R.S. 9:374(A) and (B) provide that the criteria to award use and occupancy of the family home are the same. Under both scenarios, the court shall inquire into the relative economic status of the spouses and the needs of the children in making its award.

## C. *Mr. Bergmann's Argument #6: Voluntary Unemployment*

Mr. Bergmann asserts in his sixth argument that Ms. Nguyen was purposefully unemployed. Courts have widely utilized the concept of voluntary unemployment and underemployment in factoring a parent's child support

obligation. *See* La. R.S. 9:315.11(A)(1).[11]  A trial court has wide discretion in its determination of a witness' credibility for purposes of considering whether a party has acted in good faith in terminating or reducing his or her income.  *See Schult v. Schult*, 36,283, pp. 5-6 (La. App. 2 Cir. 8/28/02), 827 So.2d 465, 468 (citing *Gould v. Gould*, 28,966, p. 13 (La. App. 2 Cir. 1/24/97), 687 So.2d 685, 693). In general, voluntary unemployment or underemployment "is a fact driven consideration." *See Langley v. Langley,* 2007-0754, p. 4 (La. App. 4 Cir. 3/26/08), 982 So.2d 881, 883 (quoting *Koch v. Koch*, 1997-1600, p. 5 (La. App. 4 Cir. 4/22/98), 714 So.2d 63, 66).  A trial court's factual determination will not be disturbed absent an abuse of discretion.  *Schult*, 36,283, pp. 5-6, 827 So.2d at 468 (citing *Gould*, 28,966, p. 13, 687 So.2d at 693).

Mr. Bergmann asserts that Ms. Nguyen's "shifting, incredulous testimony" as to why she did not work was not credible and amounted to "falsehoods and half-truths" to disguise "that [she] is **choosing** to not work . . . "  The record supports Mr. Bergmann's contention that during Ms. Nguyen's testimony at the November 17, 2020 hearing, she provided several reasons why she left her job as a home health care nurse. Initially, she testified that she had stopped working as a home health care nurse to take care of the children during the pandemic.  Ms. Nguyen also cited the children's ages and relayed that the pandemic required the children to participate in remote schooling and learning at home.  Additionally, Ms. Nguyen testified that she had concerns about working as a home health care nurse due to her lifetime asthma condition. Further, Ms. Nguyen testified that conflicts between

---

[11] La. R.S. 9:315.11(A)(1) states, in pertinent part, that "[i]f a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years."

her custody schedule and work schedule limited her ability to work. Although Mr. Bergmann emphasizes that Ms. Nguyen worked a similar work schedule before she voluntarily left her job, Ms. Nguyen explained during her testimony that prior to the pandemic, she was able to retain other people, such as her mother and babysitters, to care for the children while she worked.

After hearing Ms. Nguyen's testimony, the trial court concluded that Ms. Nguyen's reasons for voluntary unemployment were in good faith. The trial court had wide discretion in its determination of Ms. Nguyen's credibility for purposes of considering whether she has acted in good faith in terminating or reducing her income. *See Schult*, 36,283, pp. 5-6, 827 So.2d at 468 (citing *Gould*, 28,966, p. 13, 687 So.2d at 693). We find that the trial court did not abuse its wide discretion and thus we do not disturb that finding. 36,283, pp. 5-6, 827 So.2d at 468 (citing *Gould*, 28,966, p. 13, 687 So.2d at 693).

**D.** *Mr. Bergmann's Argument #8: Other Housing Options*

Mr. Bergmann asserts in his eighth argument that Ms. Nguyen misrepresented that the family home was her only housing option. He contends that Ms. Nguyen could live with other family members who own properties in New Orleans. As discussed, the award of use and occupancy of the family home is part of child custodial determinations, and "[b]ecause the trial judge is in a better position to evaluate the best interest of a child from [a] superior position to observe and evaluate the demeanor and credibility of the parties and the witnesses, [the trial judge's] decision will not be disturbed on review absent a clear showing of abuse." *Knapp*, 2016-0979, p. 13, 216 So.3d at 140 (citing *Smith v. Smith*, 2007-0260, 2007-0261, p. 4 (La. App. 4 Cir. 2/13/08), 977 So.2d 1114, 1116-17; *Palazzolo*, 2008-0075 at p. 35, 10 So.3d at 768; *Foshee v. Foshee*, 2012-1358, p. 4 (La. App.

21

4 Cir. 8/28/13), 123 So.3d 817, 820; *Watts v. Watts*, 08–0834, p. 2 (La. App. 4 Cir. 4/8/09), 10 So.3d 855, 857). Accordingly, "the court of appeal cannot simply substitute its own findings for that of the trial court." *Id.* (quoting *Jaligam v. Pochampally*, 2016-0249, p. 6 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, 303).

The record shows that in response to questions posed by the trial court, Ms. Nguyen attested that she did not personally own any other properties and had no other place to stay.

> BY THE COURT:
>
> Q.    Ms. Nguyen, do you have access to any properties other than the one you are currently living in?
>
> A.    No
>
> Q.    Do you have an ownership interest in any other properties other than the one you are currently living in?
>
> A.    No.
>
> Q.    Do you have family members with whom you could live with at this time if you had to?
>
> A.    No.

Further, Mr. Bergmann neither offered contradictory evidence to show that Ms. Nguyen owned other properties nor produced witnesses to verify that Ms. Nguyen could live with family members to exercise her custodial time with the children. Additionally, the trial court's December 29, 2020 judgment recognized that the children have consistently resided in the family home and that Ms. Nguyen's custodial time with the children has taken place in the home since the First Consent Judgment in April 2019. On the other hand, during this same time frame, the children's custodial time with Mr. Bergmann has been in his non-family home

22

residence.[12]    Therefore, so as not to disrupt the children from their familiar surroundings and custodial routines, the trial court concluded that the children's needs were best served by granting Ms. Nguyen use and occupancy of the family home.

Here, the trial court's determination regarding use and occupancy of the family home was based on factual findings, and the trial court's determination is thus entitled to great weight and should not be disturbed in the absence of a clear showing of abuse. *Knapp*, 2016-0979, p. 12, 216 So.3d at 139 (citing *Hanks v. Hanks*, 2013-1442, p. 8 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 214; *Leard v. Schenker*, 2006-1116, p. 3 (La. 6/16/06), 931 So.2d 355, 357). Considering the foregoing testimony and evidence presented, we find no abuse of the trial court's discretion in its credibility determination that the family home was the only viable housing option for Ms. Nguyen and that the best interests of the children were met by Ms. Nguyen receiving use and occupancy of the family home.

**E.    *Application of La. R.S. 9:374 Criteria: Economic Factor and Needs of the Children***

In applying the first criterion contemplated by La. R.S. 9:374 in awarding use and occupancy of the family home, which is the economic component, Ms. Nguyen's testimony supports that she had the greater economic need to possess and occupy the family residence: she was not working and had no other place to stay.  By contrast, Mr. Bergmann had secured alternate housing and was self-employed through his real estate business.

---

[12] As referenced herein, subsequent to the dismissal of Mr. Bergmann's Petition and Supplemental Petition for Protection against Ms. Nguyen, the parties reached the First Consent Judgment on April 10, 2019, whereby Ms. Nguyen received temporary use and occupancy of the family home.

The second criterion that a court considers per La. R.S. 9:374 in awarding use and occupancy of the family home, which is the needs of the children, also favors Ms. Nguyen. Well-settled case law establishes that occupancy by the parent who has physical custody of the children is in the best interest of the family. *See McArthur v. McArthur*, 601 So.2d 367, 369 (La. App. 5 Cir. 1992); *Burrell*, 437 So.2d at 356; *Seymour v. Seymour*, 423 So.2d 770, 774-75 (La. App. 4 Cir. 1982). Although the parties in this matter share custody, the December 29, 2020 judgment recognized that the children have consistently resided in the family home and that Ms. Nguyen's custodial time with the children has taken place in the home since April 2019, while Mr. Bergmann's custodial time with the children has been in his non-family home residence. Thus, the trial court determined that it was in the best interest of the children not to disrupt them from their familiar surroundings and custodial routines and that their needs were best served by granting Ms. Nguyen use and occupancy of the family home.

Considering the foregoing, we conclude that the trial court did not abuse its discretion in awarding use and occupancy of the family home to Ms. Nguyen.

### ASSIGNMENT OF ERROR NUMBER (2): DOMICILIARY PARENT DESIGNATION

In his second assignment of error, Mr. Bergmann asserts that the trial court erred in designating Ms. Nguyen as the domiciliary parent. Mr. Bergmann's argument is two-fold. He contends that (1) the judgment does not reflect that the trial court applied the best interest of the child factors enumerated in La. C.C. art. 134[13] in designating Ms. Nguyen as the domiciliary parent; and (2) the trial court's

---

[13] Louisiana Civil Code Article 134 is titled "[f]actors in determining child's best interest."

24

ruling was wrong based on the evidence presented. In particular, he argues that the evidence showed that he had been the children's primary caregiver; Ms. Nguyen had not acted in the children's best interest regarding their health and well-being; Ms. Nguyen failed to communicate about the children; Ms. Nguyen did not take their daughter's bullying seriously; and the trial court misunderstood the testimony on the children's therapy.

**A.     *Best Interest of the Child Factors***

The best interest of the child standard governs all child custody considerations, including the domiciliary parent designation. *See Knapp*, 2016-0979, p. 28, 216 So.3d at 148 (citing *Lannes v. Lannes*, 2007-0345, p. 4 (La. App. 4 Cir. 2/13/08), 977 So.2d 1119, 1121). Louisiana Civil Code Article 134 sets forth fourteen factors to be considered in determining the best interest of the child.[14] Louisiana jurisprudence has established that "the [trial] court is not

---

[14] The best interest of the child factors include:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.
>
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

required to analyze mechanically all of the [fourteen] factors; rather the court should balance and weigh the factors in view of the evidence presented." *Alphonso v. Cooper*, 2014-0145, p. 22 (La. App. 4 Cir. 7/16/14), 146 So.3d 796, 810 (citing *Hanks v. Hanks*, 2013-1442, p. 9 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 215). The trial court has the discretion to assign the relative weight to each factor. *Id.* Hence, "the trial court is not required to provide a literal articulation of each of the [La. C.C. art. 134] factors . . . nor is the trial court required to specifically explain its weighing and balancing of the [] factors." *Manno v. Manno*, 49,533, p. 14 (La. App. 2 Cir. 11/19/14), 154 So.3d 655, 663 (citing *Chandler v. Chandler*, 48,891, p. 6 (La. App. 2 Cir. 12/13/13), 132 So.3d 413, 417). We apply these principles to the present matter.

---

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

At the outset, we note that the issues in the best interest of the child factors numbers (1), (7-9), (11), and (13) were not raised at the November 17, 2020 hearing. Respectively, these pertain to the potential for child abuse;[15] the moral fitness of the parties; substance abuse, violence, and criminal history; the mental health of the parties; the children's parental preference; and the distance between the respective residences.

However, the trial record shows extensive testimony from both Mr. Bergmann and Ms. Nguyen regarding the remaining factors, namely (1) the love and affection between parent and child; (3) the capacity and disposition of each parent to give the child love, affection, education, and spiritual guidance; (4) the parents' capacity and disposition to provide the child with food, clothing, and medical care; (5) the length of time the child has lived in a stable environment for purposes of continuity; (6) the permanence of the existing custodial home, school, and community of the child; (12) the willingness and ability of each party to facilitate a close and continuing relationship between the child and the other parent; and (14) the responsibility for the care and rearing of the child exercised by each parent. We find that the trial court evaluated these factors in arriving at its December 29, 2020 judgment and incorporated these factors in its reasons for judgment. The trial court's judgment referenced that both Mr. Bergmann and Ms. Nguyen had been active in the daily lives of their children and that they each

---

[15] At the March 25, 2019 contradictory hearing on Mr. Bergmann's Petition and Supplemental Petition for Protection, the trial court noted the following:

> There is no other evidence in this hearing today or in the pleadings that have been filed and the allegations that indicates that there has been abuse towards the children at any time nor has there been any testimony to indicate that the children were in the proximity when any of the alleged actions were alleged to have occurred.

demonstrated care and concern for the children. However, the judgment noted that Mr. Bergmann's and Ms. Nguyen's approaches to parenting differed from each other's. In its decision to designate Ms. Nguyen as the domiciliary parent, the trial court specifically expressed that Ms. Nguyen's decision-making as it pertained to obtaining therapy for the children was premised on the children's best interests. In contrast, the trial court concluded that Mr. Bergmann seemed motivated by his self-interest. Moreover, the dispute at issue was domiciliary parent designation, not physical child custody, which had already been resolved by Mr. Bergmann and Ms. Nguyen through the First Consent Judgment. On its face, the First Consent Judgment, which outlined the joint custody agreement, demonstrated a willingness on the part of both Mr. Bergmann and Ms. Nguyen to facilitate an on-going relationship between the children and the other parent.

We find that the trial court properly considered the relevant La. C.C. art. 134 best interest of the child factors in its designation of Ms. Nguyen as the domiciliary parent; thus Mr. Bergmann's claim that the trial court did not apply these factors lacks merit. Next, we consider Mr. Bergmann's assertion that the trial court misapplied the evidence in its designation of Ms. Nguyen as the domiciliary parent.

**B.** *Application of the Evidence*

As noted, in his second assignment of error, Mr. Bergmann also alleges that the trial court's ruling was wrong based on the evidence presented because the evidence demonstrated that (1) he had been the children's primary caregiver; (2) Ms. Nguyen had not acted in the children's best interest regarding their health and well-being; (3) Ms. Nguyen failed to communicate about the children; (4) Ms.

Nguyen did not take their daughter's bullying seriously; and (5) the trial court misunderstood the testimony on the children's therapy.

### *Mr. Bergmann's Argument #1: Caregiver Status*

In asserting that the trial court misapplied the evidence, Mr. Bergmann's first argument is that the trial court wrongfully found that the parents were equal caregivers. Our review shows that the trial court made no such direct finding. Instead, the trial court found that the testimony established that both Mr. Bergmann and Ms. Nguyen were active in their children's daily lives, and the trial court recognized that each claimed to be the primary caregiver during various periods of the children's lives. Ms. Nguyen's claim focused on the period after the children were born when she was a stay-at-home mother; and Mr. Bergmann's claim centered on the three-year period before the separation when he was a stay-at-home father. Mr. Bergmann even conceded that "[there has] been some back and forth" as to the parties' self-described primary caregiver status. Mr. Bergmann and Ms. Nguyen each testified as to activities they participated in with the children. As such, we find that the trial court did not quantify the parties' primary caregiver claims. This argument is without merit.

### *Mr. Bergmann's Arguments #2 and #4: Children's Best Interests in Terms of Health, Well-Being, and Bullying Allegations*

Mr. Bergmann's second and fourth arguments that the trial court misapplied the evidence contend that Ms. Nguyen has not acted in the children's best interest regarding their health and well-being and that Ms. Nguyen did not take the bullying allegations seriously. The record does not support these arguments. Testimony from Mr. Bergmann and Ms. Nguyen established that Ms. Nguyen was proactive in her efforts to obtain therapy for both children to address issues not

only resulting from the bullying claims, but also from the parties' separation and divorce. Mr. Bergmann testified that Ms. Nguyen took the children to therapy sessions at the Children's Bureau. He also testified that Ms. Nguyen's occupation as a nurse gave her a superior knowledge regarding the children's medical issues. Ms. Nguyen testified that she had a conversation with their daughter about a school transfer and that the conversation resulted, in part, from concerns about the bullying allegations. Additionally, Mr. Bergmann's claim that Ms. Nguyen has not acted in the children's best interest regarding their health and well-being is undercut by the trial court's specific finding in its judgment that Ms. Nguyen's actions to secure therapy for the children were motivated by the children's best interests. Mr. Bergmann's arguments that Ms. Nguyen did not act in the children's best interest in terms of their health, well-being, and bullying concerns is without merit.

### *Mr. Bergmann's Argument #3: Communication*

In his third argument, Mr. Bergmann asserts that Ms. Nguyen should not have been designated the domiciliary parent because she fails to communicate about the children. Mr. Bergmann maintains that Ms. Nguyen does not always tell him about the children's health and schooling issues. As examples, he cites instances in which Ms. Nguyen sent e-mails to the children's school and did not immediately copy Mr. Bergmann, as well as a conversation that Ms. Nguyen had with the children about changing schools. However, during her testimony at the November 17, 2020 hearing, Ms. Nguyen explained that her communication with Mr. Bergmann is limited because she feels harassed and bullied by his text message inquiries and perceives them as a method to control her. Ms. Nguyen also testified that she wants to limit her contact with Mr. Bergmann because of the

30

dismissed Petition for Protection that that he filed against her, as well as his attempts to have her arrested. Nevertheless, Ms. Nguyen testified that despite her reluctance to communicate with Mr. Bergmann, she informs him of the major issues regarding their children and that she, in turn, needs to only be informed of the major issues. With particular reference to conversations she had with their children about a school transfer, Ms. Nguyen noted that the school transfer possibility was only a "thought" and no action had taken place to effectuate a transfer.

Notwithstanding Mr. Bergmann's complaints about Ms. Nguyen's alleged failure to communicate, the record contains testimony from both parties which acknowledges on-going communication concerning the children. Moreover, Mr. Bergmann references no instance where Ms. Nguyen's alleged failure to communicate resulted in a direct, deleterious effect on the children. This argument lacks merit.

### *Mr. Bergmann's Argument #5: Therapy for the Children*

In his fifth argument that the trial court misapplied the evidence, Mr. Bergmann alleges that the trial court misunderstood the testimony concerning the children's therapy. Mr. Bergmann asserts that he signed the children up for therapy with the Children's Bureau and that Ms. Nguyen did not promptly tell him that the children's therapy sessions had begun. Mr. Bergmann also contends that the discontinuation of treatment with Dr. Fontenelle occurred because Ms. Nguyen unilaterally decided for their son to be treated by Dr. Fontenelle without Mr. Bergmann's consent. Mr. Bergmann asserts that the trial court should not have adversely considered his objection to the therapy because there was no court-ordered agreement for the son to be treated by Dr. Fontenelle. However, the record

31

contains no finding that the trial court concluded that Mr. Bergmann had violated any court order or agreement for their son to attend therapy sessions with Dr. Fontenelle. Instead, the trial court concluded that Mr. Bergmann's underlying objection to the son's participation in the therapy appeared to have been made in Mr. Bergmann's own interest rather than their son's best interest. Thus, this argument regarding the trial court's "misunderstanding" of the children's participation in therapy also lacks merit.

We conclude that Mr. Bergmann's second assignment of error, which contends that the trial court erred in designating Ms. Nguyen as the domiciliary parent, is without merit.

## DECREE

For the foregoing reasons, the trial court's December 29, 2020 judgment, which granted use and occupancy of the family home to Ms. Nguyen and designated Ms. Nguyen as the domiciliary parent, is affirmed.

**AFFIRMED**